Alberto **RODRIQUEZ** (86–1444), Plaintiff–Appellee,

Harley Hubbs (86–1623), Plaintiff–Appellant,

Richard M. Colasurd and Donald M. Colasurd, (86–3108), Appellants,

Charles Hayes (86–3108), Plaintiff,

v.

Otis R. **BOWEN**, M.D., Secretary of Health and Human Services, Defendant–Appellant, (86–1444), Defendant–Appellee, (86–1623, 3108).

Nos. 86–1444, 86–1623 and 86–3108.

United States Court of Appeals, Sixth Circuit.

Reargued March 30, 1988.

Decided Jan. 11, 1989.

---

Patricia G. Blake, Asst. U.S. Atty., Detroit, Mich., Peter Krynski, Asst. General Counsel, S.S. Div., Dept. of Health and Human Services, Baltimore, Md., Carlotta P. Wells, for defendant-appellant in No. 86-1444.

William Michael White (argued), Mt. Clemens, Mich., for plaintiff-appellee in No. 86-1444.

Newton B. Bernstein, Bernstein & Bernstein, P.C., Southfield, Mich., Michael J. Cantor (argued), for plaintiff-appellant in No. 86-1623.

Carolyn Bell Harbin, Asst. U.S. Atty., Detroit, Mich., Mary Beth McNamara, Office of the General Counsel, Dept. of Health and Human Services, Baltimore, Md., Carlotta P. Wells, for defendant-appellee in No. 86-1623.

Richard M. Colasurd, Toledo, Ohio, Donald M. Colasurd, Columbus, Ohio, Michael D. Colasurd, James Roy Williams, Cincinnati, Ohio, for appellants in No. 86-3108.

Carolyn Watts Allen, Cleveland, Ohio, Carla D. Moore, Asst. U.S. Atty., Bruce G. Forrest (argued), William Kanter, Civil Div., Dept. of Justice, Washington, D.C., for defendant-appellee in No. 86-3108.

Before ENGEL, Chief Judge *, KEITH, MERRITT, KENNEDY, MARTIN, JONES, KRUPANSKY, WELLFORD, MILBURN, GUY, NELSON, RYAN, BOGGS and NORRIS, Circuit Judges, and PECK, BROWN and LIVELY,** Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge.

In the above cases consolidated for a rehearing *en banc,* three district courts rendered judgments favorable to claimants, reversing the Social Security Administration's denials of their disability claims.

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

** The Honorable Pierce Lively became Senior Circuit Judge January 1, 1989.

1. 42 U.S.C. § 406(b)(1) provides in pertinent part:

These three appeals are not concerned with the merits of those denials, but petition this court to adjust attorney's fees awarded by the district courts under 42 U.S.C. § 406(b)(1).[1]

In *Rodriquez v. Secretary of Health & Human Services,* claimant Rodriquez and his attorney had entered into a "fee agreement" under which the latter was to receive a fee in the amount of twenty-five percent of the past due benefits approved for payment. After the district court awarded benefits, Rodriquez's attorney filed a petition for attorney fees asking for $7,004.30, which was twenty-five percent of the benefits award. In his petition, Rodriquez's attorney included an itemized record of the hours spent representing the claimant, indicating his normal hourly billing charges for noncontingent fee cases and noting that a fee agreement had been entered into. Rodriquez's counsel stated that he had spent a total of 32.75 hours in representing the plaintiff. He stated that his normal billing rate for matters not involving contingent fee contracts was from $75.00 to $120.00 per hour.

The Secretary filed objections to the requested fee and argued to the district court that the fee should be reduced because an award of twenty-five percent of the past due benefits would result in an unreasonably high hourly rate, one that would be twice his usual rate and higher than the normal hourly rate for similar work performed by attorneys in the relevant geographic area. The district court denied the Secretary's objections primarily on the basis of the "contingent nature" of the case. The Secretary then appealed to this court asking that the fee be reduced. The Secretary urged that the court did not consider the difficulty of the case nor the quality or quantity of the work performed.

Whenever a Court renders a judgment favorable to a claimant under this title who was represented before the Court by an attorney, the Court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25% of the total of the past due benefits to which the claimant is entitled by reason of such judgment....

Because this court decided to hear this case *en banc,* an opinion was not filed.

In *Hubbs v. Secretary of Health & Human Services* the claimant was finally awarded benefits after over five years of administrative hearings and appeals to various tribunals. Claimant Hubbs' attorney requested $9,511.55 (twenty-five percent of Hubbs' accrued benefits), which had been agreed upon in a contingent fee contract. Hubbs' attorney has pointed out that the accrued benefits of Hubbs' dependents were not included in the category of past-due benefits, to which he would have been entitled. The district court subsequently reduced the requested fee substantially. Hubbs' attorney complains, on appeal, that the district court arbitrarily reduced the fee and did not give proper consideration to the existence of the contingent fee contract executed by Hubbs and his attorney.

A panel decision in this case was not filed but was reserved for consolidation and *en banc* determination.

*Hayes v. Secretary of Health & Human Services* also involved a successful claimant whose attorney attempted to enforce a contingency fee agreement of twenty-five percent of the past-due benefits. The Magistrate found that a reasonable fee was an amount less than that requested. The Magistrate based his determination on the usual hourly fee for handling Social Security cases in that district, the "complexity of the case, the expertise of the attorney, and other factors." On appeal, counsel for claimant Hayes asked that this court reverse the Magistrate's order and find that his original request for twenty-five percent of the past-due benefits is reasonable in this case, arguing that his diligence and competency in this matter were of the highest order.

A panel decision of this court, which has now been vacated by the grant of *en banc* review, held that the contingency fee contract did not "by itself" entitle Hayes' counsel to a fee of twenty-five percent of the past-due benefits and that the Magistrate did not abuse his discretion in setting the reduced fee. The Magistrate considered various factors in arriving at the fee award, although he did not specifically address the fee contract in his order. A dissent to that opinion stated that the case should be remanded "with instructions to address the fee agreement explicitly."

The above three cases were consolidated for a *sua sponte en banc* review in order to determine an appropriate method for setting the attorney's fee of a successful Social Security claimant, and to consider what factors *may* or *must* be included in that calculation.

The payment of attorneys' fees to counsel representing Social Security claimants is an issue of mounting interest in the legal community. As a result, Congress has in fact ordered that a study be completed concerning the longterm reform of the entire fee authorization and payment process. Section 9021 of Pub.L. No. 100–203 requires the Secretary of HHS to conduct a study of the attorney fee payment process under Title II of the Social Security Act. Specifically, the law requires that the study shall:

● Assess levels of reimbursement to attorneys taking into account the contingent nature of most agreements between claimants and their legal representatives;

● Propose alternative methods for establishing fees which take into account the nature of these contingent agreements; and

● Suggest changes which simplify and streamline the fee payment process.

In addition, the law directs consultation with individuals who represent the views both of attorneys and of claimants, and requires the Secretary to report the findings together with any recommendations to Congress, by July 1, 1988. The Social Security Administration Office of Hearings and Appeals published a notice in the Federal Register, asking for public comment on certain areas including: the weight that should be given to contingent fee arrangements; whether there should be a dollar limitation on fees or a sliding percentage fee schedule; whether a lodestar hourly amount should be utilized; whether a change in the review procedure should be effected. 53 Fed.Reg. 9818 (1988).

As of the date of the filing of this opinion, the report has not been submitted to Congress.

Black lung disability cases are obviously closer than most to social security disability cases; in fact, 42 U.S.C. § 406(b)(1) is applied in black lung cases through 30 U.S. C. § 923(b). *See, e.g., Blankenship v. Schweiker,* 676 F.2d 116 (4th Cir.1982) (a black lung disability case utilizing social security cases as guidance in reviewing an award of attorney's fees). However, the area of black lung disability is similarly filled with inconsistent methods in considering fee requests and is therefore not helpful in fashioning a single approach.

Comparisons can also be made between Social Security cases and workers' compensation cases but the states vary significantly in this approach. Twenty-one states have statutes which set a maximum fee ranging from ten to thirty percent, some with a specific maximum dollar amount. Some allow a certain percentage up to a stated dollar amount and with a reducing percentage as the dollar amount of the recovery increases. *See, e.g., Norsworthy v. Georgia–Pacific Corp.,* 249 Ark. 159, 458 S.W.2d 401 (1970) (explaining Arkansas' sliding scale for attorney's fees).

In determining a reasonable fee in workers' compensation cases, a large number of factors are utilized and vary considerably from jurisdiction to jurisdiction, and may be set out by statute, board rule, or judicial decision. *See* 3 Larson's Workmen's Comp.L. (MB) § 83.13(c) (1988) for an exhaustive list of different approaches found in various states. States also differ in the amount of discretion given the tribunal reviewing the fee request. In Montana, for example, "the administrator shall consider the time the attorney was required to spend on the case, the complexity of the case, and any other relevant matter the administrator may consider appropriate." Mont.Code Ann. § 39–71–611 (1981). In Florida, the deputy commissioner has a list of eight factors that he "shall consider." Fla.Stat.Ann. § 440.34(1) (West 1979).

An easy comparison cannot be drawn between the determination of attorney's fees in social security cases and in other areas of law. Most fees in social security cases are pre-arranged on a contingency basis due to the indigency of a great number of the claimants. The contingency aspect involved in these cases, however, is quite dissimilar from, for example, that in personal injury cases, although in both skillful advocacy may establish liability in a difficult case. Unlike a personal injury case, the amount of a social security claimant's benefit award normally does not increase as a result of the attorney's skillful or vigorous advocacy. *See McKittrick v. Gardner,* 378 F.2d 872 (4th Cir.1967). A social security claimant's recovery of benefits is an entitlement, a precise calculation of an amount due. The court in *McKittrick* stated:

> The rate of accrual of benefits varies without any relation to the merits of the claim. It is fixed by such things as the claimant's prior earnings and the number of his dependents. The issue in the usual case is entitlement to benefits; their computation is rarely in question. Unlike personal injury actions, therefore, the amount of the recovery bears no relation to the lawyer's skill, effort or effectiveness.

*Id.* at 874. It does not include, as in personal injury cases, a somewhat subjective estimation of pain and suffering. Likewise, there are no punitive aspects to an entitlement award concerning which the fact finder must often make an assessment as to fault. The amount of the benefits award is an objective computation of a claimant's entitlement and there is no occasion for it to be inflated beyond that on any basis.

A social security claimant's attorney fee also differs from the statutory "fee shifting" types of cases such as in suits based on the Clean Air Act, 42 U.S.C. § 7604(d), the Civil Rights Act, 42 U.S.C. § 1983, 1988 and the Equal Access to Justice Act, 28 U.S.C. § 2412. *See e.g., Northcross v. Bd. of Educ. of the Memphis City Schools,* 611 F.2d 624 (6th Cir.1979) (using the lodestar concept as the appropriate fee inquiry in this school desegregation case), *cert. de-*

*nied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed. 2d 862 (1980); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (in federal civil rights actions, initial estimate of reasonable attorney's fees is properly calculated by multiplying number of hours reasonably expended on litigation times reasonable hourly rate with necessary adjustments). *But see Coulter v. State of Tennessee,* 805 F.2d 146 (6th Cir. 1986) (setting out method of adjusting lodestar when "excessive hours" are claimed). Of paramount importance is the fact that in such cases the opponent pays the fee. In social security cases, the burden of paying the fee always remains with the successful claimant. "Under the typical fee-shifting statute, attorney's fees are awarded to a prevailing party and only to the extent that party prevails." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 3081, 97 L.Ed.2d 585 (1987) (involving a citizens' group which successfully brought suit against the Commonwealth of Pennsylvania under the Clean Air Act). The risk in these cases is dependent upon the likelihood that the facts would be decided against the complaint and the degree to which the law is unsettled with respect to the issues raised in that case. *Id.* 107 S.Ct. at 3081.

In the area of civil rights litigation, fee shifting provisions were promulgated to encourage lawyers to take on cases of public importance even though the legal precedent was undeveloped and the chance of success was uncertain at best. 42 U.S.C. § 1988, and as amended under the Civil Rights Attorney's Fees Awards Act of 1976. It was the will of Congress that constitutional rights be recognized and vindicated through private action. In later cases, the courts have tended to be less likely to make upward adjustment to these fees or to enhance the lodestar based solely on the contingent nature of the case. In *Delaware Valley Citizens' Council,* 107 S.Ct. at 3086–89, four Justices concluded that § 304(d) of the Clean Air Act should be construed as not permitting enhancement of a reasonable lodestar fee to compensate for an attorney assuming the risk

of loss and of nonpayment. 107 S.Ct. at 3086–89. Four other Justices opined that an adjustment should be allowed in appropriate circumstances. *Id.* at 3089–91. One Justice found that an adjustment was not proper in that case. As indicated, the law remains at odds on this point.

Congress provided authority to the Social Security Administration in 42 U.S.C. § 406(a) and to the federal courts in 42 U.S.C. § 406(b)(1) to approve and to fix the amount of fees of social security claimants' attorneys for services rendered in obtaining benefits. The legislative intent to protect the social security claimant from the burden of paying excessive attorney's fees was clearly expressed:

> It has come to the attention of the committee that attorneys have upon occasion charged what appear to be inordinately large fees for representing claimants in Federal district court actions arising under the social security program. Usually, these large fees result from a contingent-fee arrangement under which the attorney is entitled to a percentage (frequently one-third to one-half) of the accrued benefits. Since litigation necessarily involves a considerable lapse of time, in many cases large amounts of accrued benefits, and consequently large legal fees, are payable if the claimant wins the case.

S.Rep. No. 404, 89th Cong., 1st Sess. U.S. Code Cong. & Admin.News, p. 305, 2062 (1965). Most of the social security claimants have limited resources and have the added handicap of severe physical impairments. The fee approval provision is also designed to assure adequate compensation to the claimant's attorney and as a consequence to encourage attorney representation. *See, e.g., MacDonald v. Weinberger,* 512 F.2d 144, 146–47 (9th Cir.1975).

The grant of authority to review fee petitions to both the Social Security Administration and to federal district court has created questions concerning whether each tribunal should be limited to reviewing the fee for work that was performed before it. The Sixth Circuit held that the statutory fee approval provision gives one forum the

authority to review services performed both at the administrative level and in federal court in order to determine the entire fee allowed. *Webb v. Richardson,* 472 F.2d 529 (6th Cir.1972). The court in *Webb* found that "the tribunal that ultimately upholds the claim for benefits is the only tribunal that can approve and certify payment of an attorney fee." *Id.* at 536.[2]

Each tribunal is required to determine the reasonableness of a requested fee. 42 U.S.C. § 406(b)(1). To that end, the Social Security Administration has indicated evaluative criteria to be used at the administrative level as stated in 20 C.F.R. § 404.1725(b)(1) and recommends that a tribunal shall decide the appropriateness of the fee according to:

(1) the extent and type of services performed;

(2) the complexity of the case;

(3) the level of skill and competence required of the representative;

(4) the amount of time spent;

(5) the results achieved;

(6) the level of review to which the claim was taken and the level of review at which the representative became involved; and

(7) the fee requested.

Courts have seen fit to utilize these criteria but with a wide variety of approaches; they have given different weight or treatment to each criterion and have often used additional factors. Many courts have adopted the more extensive list of factors used in the civil rights case, *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). In its list of twelve factors,[3] the court in *Johnson* added, among other things, the need to consider whether the fee is fixed or contingent. The Court in *Pennsylvania v. Delaware Valley Citizens' Council* interpreted *Johnson* as intending that the contingency factor was to focus judicial scrutiny solely on the existence of a contract for attorney's fees which may have been executed by the parties. 107 S.Ct. at 3085. This issue has been an example of one of many issues in dispute among the circuits in setting attorney's fees. For example, the Fifth Circuit expressed its concern regarding the large fees being awarded in these cases:

> [J]udges should constantly remind themselves that, while the lawyer is entitled to a reasonable compensation for the services rendered by him in the judicial proceeding, these benefits are provided for the support and maintenance of the claimant and his dependents and not for the enrichment of members of the bar. Routine approval of the statutory maximum allowable fee should be avoided in all cases. In a great majority of the cases, perhaps, a reasonable fee will be much less than the statutory maximum. The statute directs a determination and allowance of a reasonable fee and the courts are responsible under the Act for seeing that unreasonably large fees in these Social Security cases are not charged or collected by lawyers.

*Redden v. Celebrezze,* 370 F.2d 373, 376 (4th Cir.1966). The Ninth Circuit stressed similar policy considerations by counseling judges to be particularly diligent in reviewing the fee requests because of the "already-inadequate stipend for the support and maintenance of the claimant and his dependents." *MacDonald v. Weinberger,* 512 F.2d at 146–47. The Third Circuit in

---

**2.** Some of the participants in this *en banc* review have requested this court to overrule *Webb v. Richardson.*

**3.** The factors utilized by the court in *Johnson* are:

1) time and labor required
2) novelty and difficulty of the questions
3) skill requisite to perform the legal service properly
4) preclusion of other employment by the attorney due to the acceptance of the case
5) customary fee

6) whether the fee is fixed or contingent
7) time limitations imposed by the client or the circumstances
8) amount involved and the results obtained
9) experience, reputation, and ability of the attorneys
10) "undesirability" of the case
11) nature and length of the professional relationship with the client
12) awards in similar cases

488 F.2d at 717–19.

*Coup v. Heckler* had stated its agreement with the use of contingency enhancements and distinguishes *Delaware Valley Citizens' Council* as a fee-shifting case and therefore inapplicable where the fee is paid by the defendant, not the client. 834 F.2d 313 (1987). The court in *Coup* points out that in these cases "a contingency enhancement ... simply recognizes that [the claimant] was willing to pay more to induce his attorney to take a case where there was a risk of nonpayment." *Id.* at 324. This circuit, too, has found that the contingent nature of compensation is relevant to the appraisal of a fee claim because of the lawyer's risk of receiving nothing for his services. *In re Horenstein*, 810 F.2d 73, 75 (6th Cir.1986).

\* \* \*

We attempt here to bring a semblance of order to this chaotic battleground of inconsistency, one in which all parties are clamoring for an even, predictable approach in attorney's fee authorization. The courts as well as the Social Security Administration are sometimes spending almost as much time reviewing and setting fees as they are in dealing with the merits of the benefits determination. Our aim is to provide a clearer and therefore more efficient framework for guidance of the respective district courts on the remands hereinafter ordered of the three cases presently before us, and of the courts of this circuit generally in determining fee awards in social security cases.

We begin by using twenty-five percent of the past due benefits as a benchmark. As stated above, the legislature has drafted the fee provision so that there is a cap of twenty-five percent of the past due benefits allowed for recovery and has inserted the requirement that the court must determine the "reasonableness" of the award up to that maximum. 42 U.S.C. § 406(b)(1); *see Lavender v. Califano*, 683 F.2d 133 (6th Cir.1982) (an award of twenty-five percent of the past due benefits is not automatic). While we use that mark as a starting point for the court's analysis, we emphasize that it is not to be viewed as *per se* reasonable.

The court should then look to whether a fee agreement has been executed by the claimant and the claimant's attorney. When two parties enter into such an arm's length agreement, due deference should be given to this expression of the intentions of the parties. However under the special circumstances of court authorization of fees in social security cases, a court is not bound to award recovery according to the stated agreement. *See Bailey v. Heckler*, 777 F.2d 1167 (6th Cir. 1985) (fee agreement is not binding and district court may award less if reasons are articulated); *Lewis v. Secretary of Health & Human Services*, 707 F.2d 246 (6th Cir. 1983) (stating that the contingency fee contract, although a consideration, was not binding on the court). Nevertheless, if the agreement states that the attorney will be paid twenty-five percent of the benefits awarded, it should be given the weight ordinarily accorded a rebuttable presumption. The court should give close attention to the agreement between attorney and client. In the event the court chooses not to give effect to the terms of the agreement, it should state for the record the deductions being made and the reasons therefore.

Deductions generally should fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended.

As to the first category, delay is probably the most common problem encountered in evaluating the attorney's intentional or unintentional neglect. Unfortunately, because the award is based on the amount of "past-due" benefits which increase as time passes, a lawyer is almost always financially served by delay in a final decision on the claim. *See e.g., Blankenship v. Gardner*, 256 F.Supp. 405, 416 (W.D.Va.1966) ("[I]t will always be of financial benefit to the lawyer to delay the case as much as possible so that the accumulated benefits in which he is to share will be larger"); *see also Webb v. Richardson*, 472 F.2d at 537

("courts should be especially hesitant to award the statutory maximum in cases in which delays of any consequence have occurred"); *Dearing v. Secretary of Health & Human Services*, 815 F.2d 1082 (6th Cir.1987) (holding past due benefits could not be calculated beyond three months after claimant was ready for trial, even though the delay was not due to the fault of counsel). The court in *Redden v. Celebrezze, supra,* commented as follows concerning the delay factor in these cases:

> Under our construction of the statute, the maximum limitation should be adequate to provide a reasonable fee for the lawyer who diligently prosecutes the case and brings it to an early conclusion, without forcing or encouraging him to bring in the dependents as formal parties in order to create the same maximum fee base which we find the Act provides. He is not discouraged from proceeding diligently and promptly before accrued benefits mount up; he is not encouraged to resort to obvious procedural devices for the enhancement of his own fee. At the same time, with the best of will on the part of the claimant's lawyer, these disability cases are frequently drawn out over a considerable period of time and the accrued benefits which are ultimately determined to be payable may be very substantial.

370 F.2d at 376.

■ A court should not look kindly at an attorney's pattern of consistently pushing this time limitation to the last day possible before filing a request or response. Nor should a court reward incompetence by allowing an award which has become inflated through any procedural missteps. If a lawyer has taken an improper route or turn, he should not benefit from time spent finding his way.

■ Secondly, a deduction should be made by the court if the award of benefits is so high as to cause attorney's fees to constitute a "windfall." Many courts and Congress have discussed the need to prevent windfalls for lawyers. *See, e.g., Coulter v. State of Tennessee, supra,* 805 F.2d at 149. We will not incorporate a scale or grid into this opinion or otherwise attempt to draw a line beyond which a fee becomes unconscionable. Perhaps the legislature in its wisdom will choose to do so after an exhaustive empirical and statistical survey.

■ Although we recognize that there are cases where the lawyer's unusual skill or diligence wins the case, typically the number of hours that are required to prosecute an appeal from the Secretary's determination will not vary greatly and will bear little if any relationship to the results achieved.[4] Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards fee would obviously be inappropriate. The reviewing courts should not hesitate to make reductions in such situations, and at the other end of the spectrum should only allow maximum fees for extensive effort on the part of counsel who have overcome legal and factual obstacles to the enhancement of the benefits awarded to his client.

The three cases before us are remanded to the district courts from which the appeals were perfected for further proceedings consistent herewith.

WELLFORD, Circuit Judge, concurring in part and dissenting in part:

I concur in the remarks set out by Judge Peck that "a court should not look kindly at ... [a] pattern of consistently pushing [the] time limitation," and that a court should not "reward incompetence by allowing an award which has become inflated through any procedural missteps." Not only should a lawyer not profit from taking an "improper route," he or she also should not benefit from spending an unreasonable amount of time in the course of preparing a claim for hearing or disposition, or from

---

**4.** An interesting in-house survey performed by Chief Judge Carl Rubin of the Southern District of Ohio and encompassing seven years of data found that the average number of hours asserted in the fee petition was 37.3.

pursuing a part of a claim that is without merit. If, for example, he should pursue a claim that is partially but clearly barred by res judicata principles, he should not be rewarded for time devoted to that aspect of the case even if the attorney prevailed on another part of a petitioner's claim.

I further agree that in many (and probably most) cases of the "boilerplate" type, routine controversies or claims where no unusual research is implicated or where the dispute is more an interpretation of fact than development of proof or of legal authority, "the benchmark 25% of awards fee would obviously be inappropriate."

I would emphasize that *Webb v. Richardson,* 472 F.2d 529 (6th Cir.1972), and *Dearing v. Secretary,* 815 F.2d 1082 (6th Cir. 1987), are still good law in this circuit and that an attorney fee should be calculated on the amount of past due benefits accrued *three months* after plaintiff's motion for summary judgment and not thereafter based on some larger amount calculated by reason of passage of time.

I dissent, however, from treatment of a twenty-five percent fee as a "benchmark." I believe that this amount has been determined by Congress and has been treated by the Secretary properly as a cap or maximum limitation on attorney fees in social security cases. If an exceptional, very satisfactory, or especially commendable job has been done by the attorney, then he or she should be awarded the *maximum* allowable twenty-five percent fee. While the majority points out, citing *Lavender v. Califano,* 683 F.2d 133 (6th Cir.1982), that award of twenty-five percent, even if considered a "benchmark," is "not automatic," I maintain that the "benchmark" amount should, rather, be fifteen or twenty percent with room for recognition of above average or superior performance. There would still be room for allowance of a lower fee in the case of subpar or less than acceptable competent performance. We noted recently, for example, in *Bailey v. Heckler,* 777 F.2d 1167, 1170 n. 3 (6th Cir.1985), that "this court has stressed that given the general lack of correlation between the *amount* of a social security award and the attorney's

performance, courts should hesitate to grant 'routine approval' of the statutory maximum contingency fee."

We have held, correctly I believe, that a contingent fee contract in a social security case is not binding on this court but is merely a consideration or factor to take into account. *Bailey v. Heckler,* 777 F.2d 1167. I dissent from treating the usual twenty-five percent contingent fee contract as establishing a "rebuttable presumption" that the attorney is entitled to this maximum amount. It does not seem unduly difficult to me for district courts in a particular district to set out a standard or lodestar hourly fee for attorneys practicing in this area of the law and to permit these district courts to give some enhancement in appropriate cases for hours reasonably shown to be spent or required in pursuit of a particular claim where a contingent fee has been agreed upon. Use of these contingent fee agreements is standard operating procedure for many, if not most, attorneys practicing in this area. I do not believe contingent fee agreements require "close attention" by the court making a fee allowance, nor do I believe they should set out a presumed entitlement for fees regardless of hours spent on the case and the inherent difficulty of some cases in contrast to the routine nature of most.

It should be noted that in a number of cases, the claimant or applicant is claimed to be a minor, or incompetent to handle his own affairs, or mentally or emotionally incapable or disabled. These claimants presumably would have no capacity to enter into a binding or meaningful contingent fee agreement. In none of these cases should the existence of a minimum fee agreement be even a material consideration; rather, the court should consider the interests of the minor or the incompetent or mentally incapacitated claimant without any presumption of an attorney's entitlement to a fee of twenty-five percent of an award. In my opinion, in those cases at least, we should adhere to the lodestar hourly amount of fee multiplied by the reasonahle number of hours shown to have been devoted to the case, recognizing the incapacity of the claimant to agree in all cases on a fee.

I would rather follow the admonition as expressed in *MacDonald v. Weinberger*, 512 F.2d 144, 147 (9th Cir.1975):

> While the district judge may consider the fact that a lawyer has taken a case on a contingent compensation basis, the judge may not unquestionably approve the award of the 25 percent maximum fee, or any other amount claimed on the basis of a contingent fee contract. Rather, in each case, the judge must assess the value of the lawyer's services to the client, as the judge observes those services in the judicial proceedings.

There can be no "shortcut" means to deciding a *reasonable* attorney fee based on some magic formula, rebuttable presumption, or determination of some arbitrary amount above which the court will choose to view the award with more careful scrutiny. To the extent, then, that the majority may attempt an easy solution to lessen the responsibility of the courts in setting or approving fees with a required reasonable examination and explanation for the basis of the fee claimed involved, I respectfully dissent.

ENGEL, Chief Judge.

I fully join Judge Guy in his opinion concurring in part and dissenting in part. I also join Judge Wellford in his separate opinion except to the extent it appears to advocate the use of a benchmark, albeit at a reduced percentage. While sympathetic with the motives of the majority of the court in seeking to employ a benchmark approach, I believe this is a matter for the Congress, or the Secretary, if the Congress sees fit to delegate that responsibility.

RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.

Our original decision to give en banc consideration to these cases was predicated upon the fact that there was a wide divergence in the district courts of this circuit in the consideration of contingent fee contracts when computing appropriate attorney fee awards in social security cases. Some district judges were simply rejecting the contingent fee contracts and indicating that they were entitled to no consideration. At the other extreme were judges who were honoring the contingent fee contract simply on the basis that such a contract existed. Insofar as the majority indicates that neither of these approaches is correct and that district courts must determine the reasonableness of the fee on a case-by-case basis, I wholeheartedly concur. However, in the course of trying to simplify the computation of fee awards, both at the district court level and upon review by this court, the majority has gone further than our charter will allow. I am particularly concerned with the establishment of a rebuttable presumption that, where a contingent fee contract exists, the attorney *shall* be entitled to a fee that equals 25% of the award. I find this to be inconsistent with legislative intent. It also has the effect of shifting the burden to the Secretary to demonstrate the unreasonableness of the fee rather than requiring the claimant's attorney to demonstrate its reasonableness. There are a plethora of cases that have addressed the question of fee awards in social security cases, and at least twelve factors have been identified which should be considered in the fee calculus. It seems particularly inappropriate to single out any one factor and accord it rebuttable presumption status. In establishing this rebuttable presumption, the majority fails to distinguish between the significance of the existence of a contingent fee contract and the contingent nature of the result in the case. As a practical matter, most social security cases are taken by attorneys on a contingent fee basis, and one can really tell nothing about the degree of difficulty or likelihood of the success of the case from the fact of the contingent fee contract alone. Further, I think the Supreme Court has spoken on this issue in the case of *Pennsylvania v. Delaware Valley Citizen's Council*, 483 U.S. 711, 107 S.Ct. 3078, 3085, 97 L.Ed.2d 585 (1987), when it stated:

> At most, therefore, *Johnson* suggests that the nature of the fee contract between the client and his attorney should be taken into account when determining

the reasonableness of a fee award, but there is nothing in *Johnson* to show that this factor was meant to reflect the contingent nature of prevailing in the lawsuit as a whole.

The Court goes on to explain that the existence of a contingent fee contract is of some value to the court in that it is an indication of the expectation of the parties prior to the institution of the lawsuit. When it comes to the matter of enhancement of a fee, however, it is not the existence of the contingent fee contract that the district court should look to, but it is the contingent nature of the result that could reasonably have been expected. Contingent fee contracts are a method of financing litigation in which a client not able to advance the costs and fees of an attorney nonetheless is able to secure competent legal assistance. Thus, we find contingent fee contracts in cases which are sure winners as well as cases that are almost sure losers. As the Supreme Court stated in *Delaware Valley*, the contingent fee contract does not "reflect the contingent nature of prevailing in the lawsuit as a whole." 107 S.Ct. at 3085. Although *Delaware Valley* is a fee-shifting case and does not involve the awarding of fees in social security cases, I think that the rationale of the decision as relates to contingent fee contracts is completely transferable to the context in which we decide the appeals before us today.

I have nothing but sympathy for the district court judges and, for that matter the appellate judges, who have to wrestle with the residue of cases after the substantive issues have been decided. However, insofar as attorneys' fees are concerned, this is a duty that Congress has placed upon us and it requires the exercise of our discretion. The establishment of a rebuttable presumption as the majority has done unduly limits the discretion of the district judge in the first instance beyond that which Congress intended. Once we have informed the district courts that these matters must be resolved on a case-by-case basis and that, in the exercise of their

discretion the contingent fee contract is one factor for consideration, we have gone as far as we can go within the context of the cases that we took for review.[1]

---

**1.** Although writing separately, I also concur in   Judge Wellford's dissent.