# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-1045

_____

Jason Kertz

*Plaintiff - Appellant*

v.

Carolyn W. Colvin,[1] Acting Commissioner of Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: September 26, 2024
Filed: January 17, 2025

_____

Before COLLOTON, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

In October 2019, Jason Kertz applied for social security disability benefits, alleging a disability onset date of March 16, 2018, resulting from post-traumatic

---

[1]Carolyn W. Colvin has been appointed to serve as Acting Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

stress disorder, back and leg problems, and sleep apnea. Kertz appealed the initial denial of his claim. A Social Security Administration ("SSA") administrative law judge ("ALJ") then found after an evidentiary hearing that he was not disabled and denied the claim. The SSA Appeals Council upheld the ALJ's decision in February 2021. Kertz was represented by another attorney in these administrative proceedings. In May 2021, Kertz employed Nicholas Coleman "to represent me in federal court review of my SSI . . . DISABILITY case." In a contingent-fee agreement typical of social security disability representations, Kertz and Coleman agreed "that the attorney's fee for representation in my disability claim(s) before federal court shall be . . . 25 (twenty-five) percent of the past-due benefits resulting from my claim or claims . . . ."

Coleman filed a civil action in the Eastern District of Arkansas seeking judicial review of the denial of Kertz's disability claim and an opening brief. The district court[2] granted the SSA Commissioner's unopposed motion to remand to the SSA for further proceedings. Final judgment was entered. The district court granted Coleman's unopposed motion and awarded Kertz $5,426.08 in attorney's fees under the Equal Access to Justice Act ("EAJA"), which provides for the award of attorney's fees and costs to a party who prevails in a suit against the United States if the government's position is not "substantially justified." 28 U.S.C. § 2412(d)(1)(A).

On remand from the district court, the Appeals Council remanded the case to the same ALJ, who held a second hearing at which Kertz, represented by other counsel, again testified. On December 12, 2022, the ALJ issued a Fully Favorable Decision finding that Kertz has an impairment listed in Appendix 1 to 20 C.F.R. Part 404, subpart P, and therefore has been under a disability since his alleged onset

---

[2]The Honorable Patricia S. Harris, United States Magistrate Judge for the Eastern District of Arkansas, presiding with the consent of the parties. See 28 U.S.C. § 636(c)(1).

date. On November 12, 2023, SSA issued a Notice that Kertz was entitled to $96,349.00 in past-due disability benefits and that SSA was withholding 25% ($24,087.25) as potential fees to pay his attorney. On November 28, Coleman moved the district court for an award of 25% of Kertz's past-due benefits pursuant to their contingent-fee agreement, the maximum fee permitted under 42 U.S.C. § 406(b)(1)(A).[3]

The district court granted Coleman's motion for attorney's fees in part, awarding $10,667.50 of the $24,087.25 requested, based on its conclusion that an award of the full 25% was not "a reasonable fee" under § 406(b)(1)(A). Coleman appeals, arguing the district court misapplied guidelines the Supreme Court established for assessing reasonableness in Gisbrecht.[4] We conclude there was no abuse of discretion in reducing the requested fee award and affirm.

## I.

Section 406(b)(1)(A) provides:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee

---

[3]A claimant's attorney may seek fee awards under both the EAJA and § 406(b)(1)(A), but the attorney must refund to his client the smaller of the fee awards. "Thus, an EAJA award offsets an award under Section 406(b), so that the amount of the total past-due benefits the claimant actually receives will be increased by the EAJA award up to the point the claimant receives 100 percent of the past-due benefits." Gisbrecht v. Barnhart, 535 U.S. 789, 796 (2002) (cleaned up).

[4]Kertz is the named appellant, but the real party in interest is attorney Coleman, as any increase in his fee award will reduce Kertz's SSA benefits. "[T]he Commissioner . . . has no direct financial stake in the answer to the § 406(b) question." Gisbrecht, 535 U.S. at 798 n.6.

for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment . . . .

In Gisbrecht, the Supreme Court resolved a circuit conflict regarding the analysis of "a reasonable fee." Some circuits had "declined to give effect to the attorney-client fee agreement," instead employing "a 'lodestar' method, under which the number of hours reasonably devoted to each case was multiplied by a reasonable hourly fee." 535 U.S. at 797-98. Other circuits gave effect to contingent-fee agreements if the resulting fee was reasonable. Id. at 799.

Finding the statutory text "inconclusive," the Court rejected the lodestar calculation as the starting point for determining a reasonable fee -- "§ 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." Id. at 800, 807. Attorneys seeking fee awards within the statutory maximum of 25% "must show that the fee sought is reasonable for the services rendered." Id. at 807. The Court noted:

> Courts that approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness, have *appropriately* reduced the attorney's recovery based on the character of the representation and the results the representative achieved. If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court. *If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order.* See [*Rodriquez v. Bowen*, *865 F.2d 739, 747 (6th Cir. 1989) (en banc)*] (*reviewing court should disallow "windfalls for lawyers"*). In this regard, the court may require the claimant's attorney to submit . . . as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record

of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases. Judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review.

Id. at 808 (citations omitted) (emphasis added); see Jones v. Berryhill, 699 F. App'x 587, 588 (8th Cir. 2017) (unpublished).

The Supreme Court's statement that a downward adjustment is "in order" to disallow "windfalls for lawyers" has generated considerable debate and controversy, though we have not addressed the issue. We think the best indication of how the Court would apply this factor is the analysis in the Sixth Circuit en banc decision favorably quoted in Gisbrecht, 535 U.S. at 808:

Many courts and Congress have discussed the need to prevent windfalls for lawyers. We will not incorporate a scale or grid into this opinion or otherwise attempt to draw a line beyond which a fee becomes unconscionable.

\* \* \* \* \*

Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards fee would obviously be inappropriate. The reviewing courts should not hesitate to make reductions in such situations, and at the other end of the spectrum should only allow maximum fees for extensive effort on the part of counsel who have overcome legal and factual obstacles to the enhancement of the benefits awarded to his client.

Rodriquez, 865 F.2d at 747 (citation omitted).

We think it clear that, under Gisbrecht, "the award set by the contingency agreement must be the anchor of the court's reasonableness analysis under § 406(b)." Arnold v. O'Malley, 106 F.4th 595, 601 (7th Cir. 2024). "[C]ourts may consider the lodestar in their analyses so long as the court can articulate additional factors demonstrating that the excessively high fee would result in an unearned advantage." Jeter v. Astrue, 622 F.3d 371, 380 (5th Cir. 2010). We agree with our sister circuits that the windfall factor may not reintroduce the lodestar as the primary consideration under § 406(b)(1)(A). In addressing this factor, we will follow the Supreme Court's express guidance in Gisbrecht as reflected in Rodriquez, as the Sixth Circuit did in Lasley v. Comm'r of Soc. Sec., 771 F.3d 308, 309-10 (6th Cir. 2014).

## II.

The district court concluded that an award of the full 25% was not "a reasonable fee" under 42 U.S.C. § 406(b)(1)(A). The court began by setting forth the above-quoted portion of the Gisbrecht opinion. It then noted there was "no suggestion that Coleman's representation was substandard, nor was he responsible for any delay in the proceedings," but "a downward adjustment is appropriate when the award is large in comparison to the time expended by Coleman." Acknowledging that the amounts awarded in other cases vary greatly, "one constant remains: the Court is tasked with determining whether application of the contingency fee agreement results in a reasonable fee" -- precisely the analysis adopted in Gisbrecht and the above-cited cases from other circuits. The court noted that the hourly rate for Coleman's work, which consisted of filing a complaint, a motion for the extension of time to file a brief, and ultimately the merits brief, would be approximately $960 for 25.1 hours. Surveying similar Eastern District of Arkansas decisions, the court concluded that "[t]his rate is quite large in comparison to the 25 hours Coleman spent on the case." Because Coleman "did not expend a large amount of time, and the case was never reviewed by a federal judge as a result of the unopposed motion to remand," the full award of $24,087.25 would constitute a "windfall to Coleman."

-6-

On appeal, Coleman argues that the district court abused its discretion by improperly centering its analysis on the lodestar calculation in reducing his fee award, contrary to Gisbrecht. He asserts that the district court defaulted to an hourly rate of $425, penalizing him for his efficiency in handling the case without sufficient explanation. He cites district court decisions in which hourly rates above the one the district court reduced his to were deemed reasonable. Coleman characterizes the result he achieved for Kertz as particularly significant, given the long record and difficulties associated with the appeal of the ALJ's decision. He also points out that he was not responsible for any delay in the proceedings and offers statistical estimates, not presented to the district court, of the low likelihood of achieving a remand and award of benefits in Eastern District of Arkansas social security disability cases. Finally, he notes that Kertz submitted a supporting affidavit stating that the full fee award requested by Coleman would be fair and reasonable.[5]

### III.

The district court properly applied the governing law in determining whether the fee award requested by Coleman should be reduced. Quoting Gisbrecht, the court

---

[5]The statute allows for an award of fees to the attorney who represented the claimant in administrative proceedings, which may exceed 25% of the past-due benefits awarded if no contingent-fee agreement exists, 42 U.S.C. § 406(a)(1), *and* an award of up to 25% to the attorney who represented the claimant in court under § 406(b). It is SSA policy to withhold only 25% of the benefits awarded for the payment of all attorney's fees. In Culbertson v. Berryhill, the Court held that there is no aggregate 25% cap on the total fees that may be awarded under § 406(a) and § 406(b), even though "the attorney may need to file a lawsuit against his disabled client" to collect a fee that exceeds the 25% amount withheld by SSA. 586 U.S. 53, 60 (2019) (quotation omitted). The record on appeal does not reveal whether § 406(a) fee claim(s) were filed for Kertz's lengthy administrative proceedings; and if so, whether Kertz in signing the affidavit understood that he may be subject to a lawsuit if Coleman is awarded a fee that exceeds the 25% withheld by SSA.

expressly recognized that contingent-fee agreements are the primary means by which fees are set, but "§ 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." In concluding that an award of the full 25% requested "is not reasonable in this instance," the court focused on the hours Coleman spent representing the claimant and his normal hourly billing charge for noncontingent-fee cases -- facts that are of course essential to the lodestar calculation in other types of cases -- but "as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement," *exactly as* <u>*Gisbrecht*</u> *directs*, 535 U.S. at 808.

The district court provided sufficient justification for reducing the 25% contingent-fee agreement in this case. The court first noted that the case was never substantively reviewed by a federal judge because the Commissioner did not oppose Kertz's motion to remand to the ALJ. Coleman was never actively involved in litigation against the Commissioner beyond filing an opening brief. This speaks to the "character of the representation." <u>Gisbrecht</u>, 535 U.S. at 808. It is a legitimate basis for considering a downward adjustment.

While Coleman was not responsible for years of administrative proceedings, he seeks to be the passive beneficiary -- to his client's detriment -- of the substantial increase in past-due benefits resulting from the administrative delays. In nearly any other context, this would doubtless be called a "windfall." Again, a legitimate basis for considering a downward adjustment.

The district court also explained that Coleman did not expend a large amount of time working on the case. He spent only 25.1 hours, meaning the effective hourly rate for the court's downward-adjusted award was $425, which exceeds Coleman's typical hourly rate of $350 in non-social security cases. Again, an appropriate basis for considering a downward adjustment under <u>Gisbrecht</u> and <u>Rodriquez</u>.

-8-

Coleman argues the district court erred by briefly reviewing fee awards in three cases from the Eastern District of Arkansas without explaining why these cases are more relevant than his citation of "multiple district courts in the Eighth Circuit [that] have held that similar and even higher *de facto* hourly rates . . . do not represent a windfall." But the district court acknowledged that other districts have approved similar or higher fee awards. The court's windfall determination was ultimately informed by sufficient analysis of other factors more relevant under <u>Gisbrecht</u>. The district court's discretionary fee determination "ordinarily qualif[ies] for highly respectful [appellate] review." <u>Gisbrecht</u>, 535 U.S. at 808.

The judgment of the district court is affirmed. We grant Kertz's motion to supplement the record on appeal with additional SSA documents.

_____