Joseph J. ROYZER, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.

No. 89–1631.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1990.

Decided April 16, 1990.

Gerald Benjamin (argued), Levine, Benjamin, Tushman, Bratt, Jerris & Stein, Southfield, Mich., for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel, Robert Hanson (argued), Dept. of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, Ill., and Peter A. Caplan, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, Mich., for defendant-appellee.

Before KENNEDY and GUY, Circuit Judges, and ENGEL, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Claimant's counsel, Gerald Benjamin, appeals from a reduction in the attorney's fee he claimed after successfully representing claimant in a social security disability benefits claim. The district judge found the hourly rate to be "higher than is justified" and the hours expended to be "more than reasonably necessary." In the district court, the Secretary did not oppose this fee request, but on appeal has filed a brief in support of the district court reduction.[1]

Upon review, we conclude that the district court reduction was inconsistent with our holding in *Rodriquez v. Bowen*, 865 F.2d 739 (6th Cir.1989) (*en banc*), requiring us to reverse and remand.

Benjamin had a twenty-five percent contingent fee contract with the claimant.[2] He represented claimant at the administrative hearing, the Appeals Council level, and then succeeded at the district court level in getting the Secretary's denial of benefits reversed. Benjamin's time records show that he spent 34.75 hours on this case.[3]

---

1. If the Secretary is going to object, the objection ought to be made at the district court level where factual disputes, if any, can be resolved. When the objection comes for the first time on appeal, as in the case here, we are faced with a number of nit-picking factual disputes which we do not have the capability, short of remand, to resolve.

2. The fee contract actually provided for a fee not to exceed twenty-five percent, consistent with the authority of the court to order a fee less than twenty-five percent.

3. The district court, as is usual, never saw Benjamin's actual time records. A recapitulation of the records was attached to the petition for fee approval.

The fee claimed—the full twenty-five per-cent—was $5,265.12.

Although Benjamin did not bill on an hourly basis, the district court computed his hourly rate by dividing the hours worked into the amount of the requested fee. The result was an hourly rate of $151.51. We tend to agree with the trial judge that, viewed as an hourly rate billing, this is on the high side; however, this is not an hourly rate billing. It is not at all unusual for contingent fees to translate into large hourly rates if the rate is computed as the trial judge has computed it here. In assessing the reasonableness of a contingent fee award, we cannot ignore the fact that the attorney will not prevail every time. The hourly rate in the next contingent fee case will be zero, unless benefits are awarded. Contingent fees generally overcompensate in some cases and under-compensate in others. It is the nature of the beast.

We want to emphasize that we are not saying that it is per se improper for a district judge to reduce a contingent fee to an hourly rate and view the computed hourly rate as *part* of the calculus in arriving at an appropriate fee. Contingent fees in social security cases are different than in other areas of the law because Congress has put the responsibility on the federal judiciary to make sure that fees charged are reasonable and do not unduly erode the claimant's benefits.

In *Rodriquez*, we stated that the twenty-five percent fee agreement "should be given the weight ordinarily accorded a rebuttable presumption." 865 F.2d at 746. We also indicated that:

> Deductions generally should fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended.

*Id.*

There is no claim here of any improper conduct or ineffectiveness, and we do not view this as a case involving an "inordi-nately large benefit award" or one in which "minimal effort" was expended. Unlike many social security cases, the attorney here represented claimant at the administrative hearing as well as before the Appeals Council. Our decision in *Rodriquez* represented a trade-off. We were aware that many experienced district judges felt they instinctively knew when a fee was too high, even though they might have difficulty articulating the rationale for their conclusion. However, this led to a plethora of ad hoc decisions which generated a considerable number of appeals. *Rodriquez* was an attempt to make fee decisions more uniform and predictable. It was not an attempt to eliminate the discretion which Congress has placed in the first instance in the district court.

It would be unfortunate if *Rodriquez* or our reversal of the district court in cases such as this one resulted in automatic approvals of contingent fees. That is certainly not our intent. This is particularly important in light of the fact that attorneys usually have contingent fee arrangements in social security cases. Thus, when we discuss contingent fees in social security cases, for all practical purposes, we are discussing the entire universe of fee requests in this type of case. If the fees requested are to be reduced, however, the reduction must be in accordance with the standards set forth in *Rodriquez*.

Although *Rodriquez*, like all cases, will mean different things to different persons, it appears safe to say that it was intended to eliminate the intuitive approach to the resolution of fee requests.

REVERSED and REMANDED for further proceedings consistent with this opinion.

ENGEL, Senior Circuit Judge, dissenting.

Although I agree in the main with the analytical approach taken by Judge Guy in his majority opinion, I respectfully dissent in its application to this case. The opinion thereby seems to fulfill its own prophesy that *Rodriquez* "... will mean different things to different persons...."

My initial point of disagreement is that, as pointed out in the majority opinion itself at footnote 2, the contract language involved here does not involve a specific agreement to pay a flat twenty-five percent contingent fee.[1] It seems to me that the plain language says that the client agrees to pay "up to twenty-five (25%) percent of the accrued benefits" but "as shall be determined by the Division, Agency Branch or *Court authorized to set such fees.*" (Emphasis added). While the fee agreement is contingent in that counsel foregoes any effort to collect an attorney fee in case he is not successful,[2] it is not an absolute agreement by the client to pay twenty-five percent. I find it at least interesting to note that in a companion case the contract, employed by the same law firm, but after *Rodriquez,* calls unequivocally for a twenty-five percent fee, thus representing what the same counsel must have conceived were the increased prospects of exacting that full amount as a result of our *en banc* decision in *Rodriquez.* I did, of course, join with Judge Guy in the dissent to *Rodriquez* and I have no intention here to flog a dead horse. At the same time, it seems to me that *Rodriquez* contemplated the existence of a firm agreement that the attorney might collect his twenty-five percent. *See id.* at 746 ("[I]f the agreement states that the attorney will be paid twenty-five percent of the benefits awarded, it should be given the weight ordinarily accorded a rebuttable presumption."). It therefore seems to me that the majority here reads more into *Rodriquez* than was intended. Although, as the majority recognizes, most or nearly all attorney fee contracts in Social Security appeals provide for a fixed percentage of any benefits awarded, nothing in the statute, 42 U.S.C. § 406(b)(1), requires that they do so. Thus, in contrast to the agreement involved in the post-*Rodriquez* appeal which we also decide today, *McGuire v. Bowen (Secretary of HHS),* 900 F.2d 984 (6th Cir.1990) (*per curiam*), the contract in the present case appears to be an ordinary contract for the employment of services, but with counsel conceding that compensation is contingent on a successful recovery and subject to judicial approval as reasonable within the twenty-five percent cap set by statute. The reference in the contract to that figure appears simply to recognize the realities of the statutory limitation in the event of recovery. If this premise is correct, then it would seem that no presumption under *Rodriquez* arises and that we should simply review the trial judge's award of fees to determine whether it did or did not constitute an abuse of the discretion apparently vested in him by the parties themselves.[3] In sum, I do not believe that the rationale

1. The relevant language of the agreement to represent, which was entered into June 24, 1987 and therefore prior to *Rodriquez,* is as follows:

    That said ATTORNEYS agree with the CLIENT *to represent said CLIENT in any and all dealings* with the Social Security Administration with regard to the collection of any Social Security benefits, (including but not limited to Social Security Disability Benefits, Widow's Benefits, "Black Lung" Benefits, and "Old Age" Benefits), and, in consideration for these services, it is agreed that said ATTORNEYS shall receive a sum of money up to twenty-five (25%) percent of the accrued benefits awarded to said Client as a result of said ATTORNEYS representation, as shall be determined by the Division, Agency Branch or Court authorized to set such fees.

    It is understood and agreed between the CLIENT and said ATTORNEYS that the payment of the above mentioned fee is subject to review and approval by the Social Security Administration. Said ATTORNEYS agree to accept as their total fee for representation the fee which is authorized by the Social Security Administration. In addition, it is agreed between the herein referred to CLIENT and ATTORNEYS that any sums advanced in payment of medical report charges will be reimbursed to said ATTORNEYS if authorization for same is received from the Social Security Administration.

    Jt.App. at 12.

2. There is at least some authority which suggests that a claimant and his attorney could contract for the payment of fees on an hourly basis in event of an unsuccessful result and that such would be a fully enforceable contract. *See Hutchinson v. Bowen,* 676 F.Supp. 72, 74 (D.N.J. 1988) (ruling that section 406(b) on its face applies only to successful appeals).

3. A fact sheet appended to plaintiff's brief on appeal reports an "hourly rate requested" at $151.51 based upon the total fee requested, $5,265.12, divided by the 34¾ hours reported spent. This is characterized in plaintiff's brief

of *Rodriquez* would necessarily apply to the facts of this case insofar as that decision seeks to interpret agreements to pay twenty-five percent of any award because that was not the agreement of the parties here.

My second difficulty with the majority opinion is in the vagueness of its instructions to the trial court on remand. Although the trial judge's reduction in the actual hours allowed from 34 hours and 45 minutes to 28 hours has been contested in this court, the majority does not purport to review one way or the other the appropriateness of the reduction or intimate the applicable standard. Further, as a practical matter I have difficulty in reconciling the holding of the majority that *Rodriquez* "was not an attempt to eliminate the discretion which Congress placed in the first instance in the district court" with its observation but two short paragraphs later that "... it appears safe to say that it [*Rodriquez*] was intended to eliminate the intuitive approach to the resolution of fee requests." Rather obviously, the exercise of discretion means that there is room for difference of opinion and that such differences alone are not sufficient to upset such an exercise at the trial court. Put another way, what one court is willing to accept as an exercise of "discretion" by the trial court another panel, reviewing it and disagreeing, may conclude that it is only an "intuitive approach." I would myself be quite deferential in reviewing the exercise of judgment in cases such as this. The district judge or magistrate will normally be in a better position to understand the amount of effort which has gone into the case, to understand the reasonableness of the fees in the light of the attorney's own capabilities and efficiency and in light of the standards of the community. I do not believe that either *Rodriquez* or the Social Security Act requires that a precise methodology must be rigorously chiseled into

marble. There remains always the danger that if we allow too little rein in the exercise of discretion in the district court we shall only be encouraging the proliferation of litigation in our own, a concern which was specifically expressed by Judge Peck in *Rodriquez*: "The courts as well as the Social Security Administration are sometimes spending almost as much time reviewing and setting fees as they are in dealing with the merits of the benefits determination." *Id.*, 865 F.2d at 746.

In conclusion I find myself generally comfortable with the observations in the body of the majority opinion.[4] The general advice there provides a useful, if somewhat vague, guide for the judge to determine the weight to be given to a classical contingent fee contract. The only difficulty here is that this is not such a case.

---

as the "effective hourly rate." If the trial judge properly reduced to 28 hours the allowable time on the appeal, the "effective hourly rate" so revised would rise to over $188.

**4.** I do, however, have difficulty in understanding the purpose of the majority's observa-

tion that the trial judge never saw attorney Benjamin's actual time records. *See* footnote 3 majority opinion. His detailed time record appears item by item at pages 9–11 of the joint appendix and there is nothing to suggest that the factual data therein is different from the actual records in attorney Benjamin's books.