Edna L. **HAYES**, Plaintiff–Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Defendant–Appellee.

No. 89–3984.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 3, 1990.

Decided Oct. 10, 1990.

Rehearing Granted and Opinion Clarified Jan. 23, 1991.

John A. Cervay (argued), Dayton, Ohio, for plaintiff-appellant.

George Jackiw, Dept. of Health and Human Services, Office of the General Counsel, Region V, Chicago, Ill., Joseph E. Kane, Asst. U.S. Atty., James E. Rattan, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Columbus, Ohio, for defendant-appellee.

Before KENNEDY and BOGGS, Circuit Judges; and TIMBERS,* Senior Circuit Judge.

BOGGS, Circuit Judge.

This appeal is brought by John A. Cervay, counsel for successful social security claimant Edna L. Hayes. The district court denied Cervay his full 25% contingency fee, finding that it "represents a windfall." This case involves an interpretation of our decision in *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir.1989) (en banc), which established a rebuttable presumption that an attorney would receive the full 25% contingency fee under contract unless 1) the attorney engaged in improper conduct or was ineffective, or 2) the attorney would enjoy an undeserved windfall due to the client's large back pay award or the attorney's relatively minimal effort. Finding that the district court abused its discretion in reducing the fee in the way that it did, we reverse.

I

Cervay challenged in district court the Secretary's unfavorable decision on Hayes's application for widow's benefits. On August 22, 1988, the magistrate recommended that the decision of the Secretary be reversed, and benefits be awarded to Hayes. No objections to the magistrate's report were filed, and on October 27, 1988, the district court adopted the report and

---

* The Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

entered judgment for Hayes. On January 3, 1989, the Social Security Administration notified Hayes that she was owed back benefits from March 1984, amounting to a total award of $30,085. Twenty-five percent, or $7112.75, was held for payment of attorney's fees, while $22,972.25 was paid directly to Hayes.[1] This withholding was consistent with the contingency fee contract between Hayes and attorney Cervay's law firm.[2]

On June 15, 1989, Cervay filed with the district court a petition to collect his 25% fee. He documented his legal services, showing that he and his staff worked 39¼ hours on Hayes's case at both the administrative and district court levels. In his petition, Cervay noted that his requested fee translated into an hourly rate of $181.22.[3] Cervay supported his petition with documentation from six other cases, won by different attorneys between May 1988 and January 1989, in which the Secretary had not objected to attorney's fees that were equivalent to hourly rates ranging from $163 to $188. In the appendix to his brief, Cervay provides documentation of three other cases (in two of which he acted as counsel) between June 19 and November 17, 1989 in which the Secretary approved attorney's fees that were equivalent to hourly rates of $175 to $180.

On September 1, 1989, the district court ordered an award of attorney's fees in the amount of $4906.25. In denying the request for $7112.75, the court stated:

> Defendant objects to the amount of hours listed for several reasons, arguing that 25% of past-due benefits is a *benchmark* but not *per se* reasonable as instructed by the *Rodriquez* decision. Specifically, defendant argues that the requested fee results in an unreasonable hourly rate of $182.00 and that plaintiff's

attorney would enjoy a windfall if his requested fee is allowed.

> It is the opinion of this Court that the average number of hours for an attorney to work on a social security case ranges from 30 to 40 hours and that the average rate ranges from $100 to $125 per hour. Therefore, this court believes that, absent extraordinary circumstances, a fee in excess of $5000 is suspect and must be carefully analyzed for a windfall.

(Emphasis in original). The court found no "extraordinary circumstances" to exist. In fact, the court found the following to be compelling evidence of the unreasonableness of the 25% fee: 1) there had been a 33–month lag between the onset of Hayes's disability and the date Cervay was hired to represent her, and 2) the number of hours Cervay personally worked on the case was 17, while the remaining 22¼ hours were attributable to clerical, secretarial, and paralegal time.

The court awarded Cervay the amount suggested by the Secretary ($4906.25), noting that the Secretary had commended Cervay for being "quite candid," "scrupulous," and "reasonably conservative" in his petition for fees. The $4906.25 represented an average hourly rate of $125 for 39¼ hours.

## II

### A

In *Rodriquez*, we did not hold that all large fees are *per se* unreasonable. Rather, deductions for large fees are permissible under only two circumstances:

> Deductions generally should fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall *because of either an inordinately large*

---

1. Although the two amounts add up to the correct whole, the amount withheld for Cervay is less than 25%, while the amount paid to Hayes is more than 75%. No explanation is given for the slight differences.

2. The contract that Hayes signed stated: "I agree that my attorney shall receive as his fee twenty-five percent (25%) of the past-due SSD

and/or SSI benefits payable to me and *my dependents* .... It has been explained to me that in the event my claim is lost, no attorney fee shall be charged." (Emphasis in original).

3. Cervay did not, however, charge Hayes by the hour or calculate an hourly rate into the contingency fee agreement.

*benefit award or from minimal effort expended.*

865 F.2d at 746 (emphasis added). Where none of these reasons applies, an agreement for a 25% fee, the maximum permitted under § 206(b) of the Social Security Act, 42 U.S.C. § 406(b), is presumed reasonable. *Ibid.* The district court did not make a finding that the full $7112.75 fee would have been a result of an "inordinately large benefit award" or of "minimal effort." The district court instead rested its finding of a windfall on the assumption that any award that translated into an hourly rate of over $125 was *per se* unreasonable. This result is not dictated by *Rodriquez,* and in fact is contrary to the admonition in *Rodriquez* that 25% fee contracts "should be given the weight ordinarily accorded a rebuttable presumption." 865 F.2d at 746. The district court in this case, however, was not alone in assuming that its method of decision making was permissible under *Rodriquez. See, e.g., Wiegand v. Sullivan,* 900 F.2d 261 (6th Cir.1990) (unpublished per curiam) (reversing the district court's determination that a $168 hourly rate constituted a windfall); *Puryear v. Sullivan,* 902 F.2d 34 (6th Cir. 1990) (unpublished per curiam) (reversing the district court, which had engaged in "the transmogrification of contingent fee contracts into hourly rate agreements").

In two recent published opinions, *Royzer v. Secretary of Health and Human Services,* 900 F.2d 981 (6th Cir.1990), and *McGuire v. Bowen,* 900 F.2d 984 (6th Cir. 1990), we attempted to clarify some of the ambiguities unanticipated in *Rodriquez.* We held that it was error for the district courts to reduce the attorney's fee awards on the ground that the amounts called for by the 25% contingency agreements computed to high hourly rates.

In *Royzer,* as in Cervay's case, the attorney did not bill on an hourly basis. The attorney spent 34.75 hours on the case, and he requested $5265.12, the full 25% of the claimant's award. The district court determined his hourly rate by dividing the hours worked into the amount of the requested fee. The result was an hourly rate of $151.51. While recognizing that this rate was "on the high side," we found that fact irrelevant, since the attorney was not billing at an hourly rate:

> It is not at all unusual for contingent fees to translate into large hourly rates if the rate is computed as the trial judge has computed it here. In assessing the reasonableness of a contingent fee award, we cannot ignore the fact that the attorney will not prevail every time. The hourly rate in the next contingent fee case will be zero, unless benefits are awarded. Contingent fees generally overcompensate in some cases and undercompensate in others. It is the nature of the beast.

*Royzer,* 900 F.2d at 982. As with Cervay's case, there was in *Royzer* "no claim here of any improper conduct or ineffectiveness, and we do not view this as a case involving an 'inordinately large benefit award' or one in which 'minimal effort' was expended." Therefore, we held that *Rodriquez* dictated a finding that the full 25% fee was reasonable. *Ibid.*

In *McGuire v. Bowen,* the district court had awarded the attorney $3175 for 31.75 hours of work, rather than the $3969.50 he requested, because "the standard rate of fees for attorneys within this geographical area [Detroit] for work in a case of this kind is $100.00 per hour." We reversed, citing *Royzer,* because the fact that a 25% contingent fee computes to an excessively high hourly rate (in *McGuire,* $125) is not a valid reason for reducing an attorney's fee award. 900 F.2d at 985.

### B

The district court employed a technique now thoroughly rejected by this circuit: limiting attorney's fees to whatever flat hourly rate a particular court deems reasonable (in this case, $125). The statute, 42 U.S.C. § 406(b)(1), establishes a cap on attorney's fees of 25% of the claimant's award, not a cap on the hourly rate.

We recognize that *Rodriquez* gives the district courts license to consider the hourly rate represented by an attorney's 25% fee. Calculating an hourly rate from the

fee is one method of determining whether the attorney would "enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended." 865 F.2d at 746. As we noted in *Royzer*, "we are not saying that it is per se improper for a district judge to reduce a contingent fee to an hourly rate ... as *part* of the calculus in arriving at an appropriate fee." 900 F.2d at 982 (emphasis in original).

In *Royzer*, we stopped short of declaring how an hourly rate computation might be worked into the calculus. We had hoped that *Royzer* would insure that district courts retained the discretion in this field that Congress intended them to have while providing guidance sufficient to breed consistency among the district courts' decisions. Unfortunately, confusion has arisen from the latitude we have permitted the courts. We now feel it necessary to establish a firmer rule, in the absence of an effort by Congress "to draw a line beyond which a fee becomes unconscionable." *Rodriquez*, 865 F.2d at 747.

■ We believe that, under *Rodriquez*, a windfall can never occur when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract[4] is less than twice the standard rate for such work in the relevant market.[5] We believe that a multiplier of 2 is appropriate as a floor in light of indications that social security attorneys are successful in approximately 50% of the cases they file in the courts. Without a multiplier, a strict hourly rate limitation would insure that social security attorneys would not, averaged over many cases, be compensated adequately. *See, e.g., Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986) ("[w]ithout a floor the introduction of a cap would depress average fees below

their expected level in the private market"). Such a result would thwart Congress's intention to assure social security claimants of good representation. *See Rodriquez*, 865 F.2d at 744 ("[t]he fee approval provision is also designed to assure adequate compensation to the claimant's attorney and as a consequence to encourage attorney representation").

A calculation of a hypothetical hourly rate that is twice the standard rate is a starting point for conducting the *Rodriquez* analysis. It provides a floor, below which a district court has no basis for questioning, under the second part of *Rodriquez*'s windfall rule for "minimal effort expended," the reasonableness of the fee. In other words, a hypothetical hourly rate that is less than twice the standard rate is *per se* reasonable, and a hypothetical hourly rate that is equal to or greater than twice the standard rate may well be reasonable.

If the calculated hourly rate is above this floor, then the court may consider arguments designed to rebut the presumed reasonableness of the attorney's fee. Such arguments may include, without limitation, a consideration of what proportion of the hours worked constituted attorney time as opposed to clerical or paralegal time and the degree of difficulty of the case. Factors such as these should inform the district court's determination of whether the attorney would "enjoy a windfall because of ... minimal effort expended." *Rodriquez*, 865 F.2d at 746. Nothing in this opinion is intended to limit the discretion vested in district courts to make deductions for improper attorney conduct or ineffectiveness of counsel. *See Rodriquez*, 865 F.2d at 746.

Under the standards announced today, were all of the hours under consideration here recorded as attorney time, the fee sought in Cervay's petition would undoubt-

4. The "fee permitted under the contract" is, of course, the contingent fee percentage multiplied times the recovery *exclusive* of any amounts deducted under the "excessive delay" doctrine of *Webb v. Richardson*, 472 F.2d 529 (6th Cir.1972) and *Dearing v. Secretary of HHS*, 815 F.2d 1082 (6th Cir.1987).

5. If time other than attorney time is separately recorded and submitted, this fact can be taken into account in assessing the correct "standard" rate.

edly be permissible, since it represents an hourly rate that conclusively indicates that the fee did not result from "minimal effort expended." In this case, 17 hours were worked by Cervay, and 22¼ were worked by clerks, secretaries, or paralegals. As the district court is in the best position to determine the correct standard hourly rate for all of this work, we REVERSE and REMAND for reconsideration of an appropriate fee in light of this opinion.[6]

---

**6.** We note that an award of the total fee requested, using the district court's choice of a $125 standard rate for attorney time and the minimum multiplier of 2, would allow for a standard rate for non-attorney time of no more than about $64 per hour:

(17 hours) × ($125/hour × 2) = $4250 for attorney time.

($7112.75 total fee requested) − $4250 = $2862.75 for non-attorney time.

($2862.75/22¼ hours)/2 = $64.33 hourly rate for non-attorney time.

Whether a $64 hourly rate is standard for non-attorney time and how such a rate might be spread across types of non-attorney work is a matter for the district court's discretion. As noted above, whether an amount above a multiplier of 2 represents a windfall is also a matter for the district court's discretion.