Johnny E. **DAMRON**, Plaintiff–Appellant,

James Roy Williams, Attorney–Appellant,

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 96–3068.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1996.

Decided Jan. 17, 1997.

James Roy Williams (argued and briefed), Young, Reverman & Napier, Cincinnati, OH, for Plaintiff–Appellant/Attorney–Appellant.

Edward J. Kristof (argued and briefed), Social Security Administration, Office of the General Counsel, Chicago, IL, James E. Rattan, Asst. U.S. Attorney (briefed), Columbus, OH, for Defendant–Appellee.

Before: WELLFORD, RYAN, and SILER, Circuit Judges.

SILER, J., delivered the opinion of the court, in which RYAN, J., joined. WELLFORD, J. (pp. 857–858), delivered a separate concurring opinion.

SILER, Circuit Judge.

On a Social Security claim, the district court granted judgment in favor of Plaintiff–Appellant, Johnny Damron, on an appeal of an Administrative Law Judge's (ALJ's) denial of disability benefits. Damron and his attorney, James Roy Williams, subsequently filed an application for attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), and the Social Security Act (SSA), 42 U.S.C. § 406(b). The primary issues in this appeal concern whether the district court abused its discretion in (1) denying fees under the EAJA; and (2) declining to award the full amount requested under the SSA. We find that the district court did not abuse its discretion in either instance, and we **AFFIRM** the decision of the district court for the reasons stated herein.

## I. Background

Damron worked as a materials inspector for a defense contractor for more than twenty-seven years. He stopped working in 1988, claiming back and heart problems. At the time of the ALJ's denial of disability benefits, he was fifty-four years old.

Damron had been hospitalized in 1986 for observation after complaining of chest pain. In 1992, he appeared at a hospital emergency room complaining of severe back pain. He

was referred to Dr. David Herr, who noted a restricted range of spinal motion, poor muscular development of the extremities and back, and degenerative changes at the L5 disc level due to degenerative lumbar disc disease and arthritis. Dr. Herr recommended physical therapy, noting that the radiographic findings were insufficiently abnormal to justify surgery.

One month later, in a letter to Damron's attorney, Dr. Herr indicated that he felt surgery would be necessary. Dr. Herr opined that Damron was disabled from his usual occupation and would remain so until successful treatment had been implemented., In contrast, a vocational expert testified that Damron had gained transferable skills which could be used in the vocational areas of inspection and testing (sedentary work). Physicians who conducted an assessment of Damron for the Ohio Bureau of Disability Determination concluded that Damron could do light work.

The ALJ found that Damron retained the residual functional capacity (RFC) to perform sedentary work. While this did not permit Damron to return to his former job, the ALJ found Damron's RFC and vocational characteristics compatible with the requirements of other jobs existing in significant numbers in the economy. Accordingly, the ALJ determined that Damron was not disabled and, therefore, not entitled to disability benefits.

On appeal to the district court, the magistrate judge filed a Report and Recommendation wherein he found that the RFC form submitted by Dr. Herr was supported by the medical and clinical findings in the file. He also found that the assessment conducted for the Ohio Bureau of Disability Determination was entitled to little weight because the physicians completing the form had never examined or treated Damron. Therefore, the magistrate judge concluded that the ALJ's decision was not supported by substantial evidence and recommended that judgment be entered in favor of Damron. The district

judge adopted this Report and Recommendation.

However, the district judge denied the application for fees under the EAJA, citing the opinion of the physicians for the Ohio Bureau of Disability Determination as a reasonable basis for the actions of the Social Security Commissioner. With regard to the motion for fees under the SSA, the district judge reduced the requested fee of $6500 to $4200.[1]

## II. Discussion

### A. The Equal Access to Justice Act

■■■ An appellate court applies the abuse of discretion standard when reviewing a district court's decision regarding attorney fees under the EAJA. *Pierce v. Underwood,* 487 U.S. 552, 559, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988). To find that the district court abused its discretion, this court must be firmly convinced that a mistake has been made. *Shore v. Federal Express Corp.,* 42 F.3d 373, 380 (6th Cir.1994).

The EAJA provides in relevant part:

(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

\* \* \*

(2) For the purposes of this subsection—

(A) "fees and other expenses" includes ... reasonable attorney fees....

28 U.S.C. § 2412(d). In this context, "substantially justified" has been interpreted as "justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550.

Although the district court reversed the ALJ's decision to deny benefits, it concluded that the Commissioner's position was sub-

---

1. The district judge states in his Order that Williams was requesting $6200 under the SSA. In Damron's motion to the district court dated May 26, 1995 and in briefs before this court, however, Williams requested $6500.

stantially justified. Damron's contention that the Commissioner's position was not reasonable stems from her reliance on the opinions of reviewing physicians from the Ohio Bureau of Disability Determination. Damron argues that the opinion of Dr. Herr, as a treating physician, is entitled to greater weight. Although this principle is correct in general, there are several factors here that support the Commissioner's position "to a degree that could satisfy a reasonable person."

Although it is true that Dr. Herr is Damron's treating physician, the treatment relationship was not a long-term one.[2] Moreover, the Commissioner viewed Dr. Herr's recommendation of surgery suspiciously because it was proposed in a letter to Damron's attorney only one month after Herr had suggested that surgery was not necessary, and there had been no intervening examinations of Damron to explain this sudden change of opinion. Furthermore, during the time that Damron was claiming total disability, he was enrolled in twelve hours of college courses, did three hours of homework a day, commuted twenty to thirty minutes each way to classes daily, and aspired to attend law school after receiving his college diploma. In light of these facts, coupled with the opinions of the reviewing physicians that Damron could perform light work, the court's conclusion that the Commissioner's position was substantially justified is not an abuse of discretion. Accordingly, we affirm the denial of attorney fees under the EAJA.

### B. The Social Security Act

■■ This court will reverse a fee award decision upon finding an abuse of discretion. *Hayes v. Secretary of Health and Human Servs.,* 923 F.2d 418, 419 (6th Cir.1991). Section 206(b) of the SSA governs the award of attorney fees thereunder:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine

and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past due benefits to which the claimant is entitled by reason of such judgment....

42 U.S.C. § 406(b)(1). Damron and his attorney claim that the requested fee of $6500 is reasonable and should not have been reduced to $4200 by the district judge.

Damron cites to *Rodriquez v. Bowen,* 865 F.2d 739, 746 (6th Cir.1989) (en banc), for the proposition that a contingent fee contract for twenty-five percent of the total past due benefits creates a rebuttable presumption of reasonableness.[3] *Rodriquez* further states:

In the event the court chooses not to give effect to the terms of the agreement, it should state for the record the deductions being made and the reasons therefore.

Deductions generally should fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended.

*Id.* There is no allegation of improper conduct or ineffectiveness of counsel here. Nor is there a dispute over the number of hours Williams claims to have spent on the case. Williams argues that the fee was improperly reduced as a windfall in violation of the holding in *Hayes,* which states that a fee is never a windfall when it is less than twice the standard rate in the relevant market. 923 F.2d at 422. Williams spent twenty-four hours on the case and requests a fee equal to $270 per hour, or twice his hourly rate of $135 per hour.[4]

In awarding less than the requested $6500, the district court noted that the fee agreement in this case was not signed until after judgment was entered in favor of Damron. This is a sufficient reason to decrease the requested fee. The district court, in its discretion, could have felt that because the fee

---

2. Dr. Herr first examined Damron on June 30, 1992.

3. In this case, the ceiling of 25% of past due benefits equals $11,815.25.

4. Williams apparently rounded upward to the nearest hundred dollar amount, because 2 × $135 × 24 = $6480.

was not truly contingent (due to the fact that the favorable judgment had already been handed down), it was a windfall to award a fee equal to twice the market rate.

This is consistent with both *Rodriquez* and *Hayes*. The holding in *Rodriquez* is premised upon the contingent nature of the fee agreement.[5] The twenty-five percent fee agreement here is not entitled to the weight of a rebuttable presumption because the agreement was made at a time when there was no contingency—Damron had already won his case and there was no risk of nonpayment.

The *Hayes* court, too, dealt with a contingent fee agreement when it counseled:

> We believe that a multiplier of 2 is appropriate as a floor in light of indications that social security attorneys are successful in approximately 50% of the cases they file in the courts. Without a multiplier, a strict hourly rate limitation would insure that social security attorneys would not, averaged over many cases, be compensated adequately.

923 F.2d at 422. In this case, however, Williams had a 100% chance of success at the time he negotiated the fee agreement. There was no contingency, and therefore there is no need to apply a multiplier of two to the standard fee. The district court determined that doubling the standard fee in this case would amount to a windfall. Instead, it enhanced Williams' standard fee by forty dollars per hour (awarding $175 per hour) to account for his expertise in this area of law. In doing so, the court acted well within its discretion.

**AFFIRMED.**

WELLFORD, Circuit Judge, concurring.

I concur in my colleague's well-considered opinion but write separately to emphasize several aspects of the district court's decision that deserve attention. First, this court, acting *en banc*, recently considered the question of attorney fees in this type of case, and the majority stated, among other things, that it

is difficult to compare the worth of legal services in social security cases and in the ordinary tort or personal injury case. *Rodriquez v. Bowen, Secretary of H.H.S.,* 865 F.2d 739, 743 (1989). The court in *Rodriquez* noted Congress' concern that attorneys representing plaintiffs on occasion have charged "what appear to be inordinately large fees for representing plaintiffs ... usually [as a] result [of] a contingent fee arrangement." *Id.* at 744. We made it clear in *Rodriquez* that "a court is not bound to award recovery [of attorney fees] according to the stated agreement," although we recognized it as a factor to consider. *Id.* at 746. We also indicated that maximum fees should only be granted where there have been extensive and unusual services rendered. I doubt that criterion is met in this case.

I agree that *Hayes v. Secretary,* 923 F.2d 418 (6th Cir.1991), does not control under these circumstances regarding the timing of the "contingent fee" agreement. In *Royzer v. Secretary,* 900 F.2d 981, 982 (6th Cir.1990), we indicated, moreover, that it was not improper for a district court to reduce a contingent fee rate to a reasonable hourly rate to arrive at a reasonable allowable fee, and in that case, we found approximately $150 an hour to be "on the high side" but not unreasonable. In *McGuire v. Bowen,* 900 F.2d 984 (6th Cir.1990), the requested fee was $125 an hour, and this court held it error to attempt to reduce it below that reasonable level. *Hayes* did recognize that *Rodriquez* gives the district court "license to consider the hourly rate represented." 923 F.2d at 421.

I believe that if *Hayes* is an anomaly, in light of other cases cited; it does not, in my view, comport with the *en banc Rodriquez* decision and with the amount of fees considered reasonable in *Royzer* and *McGuire* (discussing fees in the range of $125 to $150 an hour). *Hayes* does not help the effort to bring order to allowances of reasonable fees in social security cases.

The district judge in this case is an experienced trial judge who made a fee award that, in this writer's view, was "on the high side"

---

**5.** Before explaining the rationale behind its decision, the *Rodriquez* court states, "This circuit, too, has found that the contingent nature of

compensation is relevant to the appraisal of a fee claim because of the lawyer's risk of receiving nothing for his services." 865 F.2d at 746.

but not beyond the bounds of reasonableness and well within his discretion. I would, accordingly, **AFFIRM** the fee award of $4,200. I concur entirely with the conclusion that plaintiff is entitled to no attorney fee on the basis of the Equal Access to Justice Act.