RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DEBRA TUCKER,

         *Plaintiff-Appellant*,

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

         *Defendant-Appellee*.

No. 24-5873

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at London.
No. 6:22-cv-00212—Danny C. Reeves, District Judge.

Decided and Filed:  May 7, 2025

Before:  CLAY, READLER, and DAVIS, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Bryan Konoski, KONOSKI & PARTNERS, P.C., New York, New York, for Appellant.  Frank D. Tankard, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, Charles P. Wisdom, Jr., Cheryl Morgan, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

DAVIS, Circuit Judge.  Debra Tucker is a prevailing social security claimant whose attorney appeals the district court's order awarding reduced attorney's fees under 42 U.S.C. § 406(b).  Tucker's counsel[1] argues that the full requested amount of $31,205.43, which would honor Counsel's twenty-five percent contingency fee agreement with Tucker, was reasonable for

─────────────────

[1]While Tucker is the nominal appellant, her counsel is the true party in interest.

the services provided.  Because the district court acted within its discretion in decreasing the fee, we AFFIRM.

I.

In 2018, Tucker applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434.  After multiple denials at the administrative level, she appealed in federal district court.  In 2023, the district court reversed the final administrative decision of the Commissioner of Social Security ("Commissioner") denying Tucker disability benefits and remanded Tucker's claim for further administrative proceedings after granting the Commissioner's unopposed motion for remand.  Following its decision to remand, the district court awarded Tucker's attorney $7,500 in attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, along with $402 in costs.  This award provided Counsel initial compensation for her 34.8 hours of work on Tucker's case in the district court, pending a final decision or award.  Counsel had a contingency-fee agreement with Tucker for twenty-five percent of any past-due benefits awarded.  In August 2024, an administrative law judge found Tucker disabled in a fully favorable decision and granted her monthly disability benefits retroactive to February 2018.  Tucker's past-due benefits totaled $124,821.70.

In September 2024, Counsel moved for the court to award her $31,205.43 in attorney's fees—twenty-five percent of $124,821.70—under 42 U.S.C. § 406(b), less the initial $7,500 EAJA fee award.  A twenty-five-percent contingency fee is the maximum percentage allowed under § 406(b).  *See* 42 U.S.C. § 406(b)(1)(a).  The Commissioner neither supported nor opposed the motion but noted that courts in the Eastern District of Kentucky have generally found fees reflecting an effective hourly rate of $500 to $700 to be reasonable.  The district court granted Counsel's motion in part and denied it in part, awarding her a gross total payment of $17,400 in attorney's fees, less the EAJA award.  The district court concluded that $31,205.43 was excessive and would amount to a windfall to Counsel.  The $17,400 awarded reflected an imputed hourly rate of $500 per hour.  In a motion for reconsideration, Counsel reduced her fee request to $22,620, reflecting an imputed hourly rate of $650 per hour.  The district court denied the motion for reconsideration.  Counsel timely appealed.  On appeal, Counsel renews her request for the full $31,205.43 in fees.

II.

We review the denial of a motion for attorney's fees under § 406(b) of the Social Security Act for abuse of discretion. *See Hayes v. Comm'r of Soc. Sec.*, 895 F.3d 449, 452 (6th Cir. 2018). A district court's ruling on a § 406(b) motion qualifies for a "highly respectful review." *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 497 (6th Cir. 2014) (citation omitted).

III.

Counsel argues that the district court misapplied the law by focusing too much on the effective hourly rate under the lodestar approach, rather than giving the contingency-fee agreement primacy. She also argues that the district court failed to properly set the standard rate, a prerequisite to determining whether Counsel's request was per se reasonable. And finally, she says the district court provided insufficient reasoning for finding the requested award unreasonable, especially considering her skill and expertise, the case's complexity, and the "excellent" result she achieved. (ECF 15, Appellant Br., 43). While the Commissioner takes no position on the reasonableness of Counsel's request, he discusses the relevant legal standards in a trustee-like role for the claimant's interests.

Section 406(b) provides that courts may award counsel who represent social security claimants in court "a reasonable fee for such representation, not in excess of 25 percent of the total of the [claimant's] past-due benefits." 42 U.S.C. § 406(b)(1)(A). The statute's allowance of "a reasonable fee" includes contingency fees but requires "court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht*, 535 U.S. at 807. As part of their review, courts must "look[] first to the contingent-fee agreement, then test[] it for reasonableness." *Id.* at 808.

Since the Supreme Court's decision in *Gisbrecht*, we have had little occasion to consider contingency-fee agreements for § 406(b) fee awards. In cases where the issue has been raised, we have continued to adhere to our precedent, cited favorably in *Gisbrecht*, 535 U.S. at 808,

holding that contingency-fee agreements within the twenty-five-percent cap are "not to be viewed as *per se* reasonable." *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989) (en banc); *see also Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 309 (6th Cir. 2014). Instead, we afford contingency-fee agreements within the twenty-five-percent cap "the weight ordinarily accorded a rebuttable presumption." *Rodriquez*, 865 F.2d at 746; *see also Lasley*, 771 F.3d at 309 (upholding *Rodriquez*'s rebuttable presumption in a post-*Gisbrecht* decision). Under this rebuttable presumption, the contingency-fee agreement is the "starting point for the court's analysis" and courts must "give [such agreements] close attention" and "due deference." *Rodriquez*, 865 F.2d at 746; *see also Gisbrecht*, 535 U.S. at 808. Nevertheless, "a court is not bound to award recovery according to the stated agreement." *Rodriquez*, 865 F.2d at 746. If "the court chooses not to give effect to the terms of the agreement, it should state for the record the deductions being made and the reasons" for those deductions. *Id.* And "[d]eductions generally should fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended." *Id.*

The Supreme Court has "expressly authorized district courts to consider the attorney's hours and standard rates in reviewing the reasonableness of contingency fees." *Lasley*, 771 F.3d at 309 (citing *Gisbrecht*, 535 U.S. at 808). If a twenty-five-percent contingency fee yields a disproportionately high effective hourly rate, then this hypothetical hourly rate can be one consideration in reducing the fee award. *See Royzer v. Sec'y of Health & Hum. Servs.,* 900 F.2d 981, 982 (6th Cir. 1990). But a high effective hourly rate cannot *on its own* justify reducing a fee award—district courts must provide additional reasoning. *See Hayes v. Sec'y of Health & Hum. Servs.*, 923 F.2d 418, 421 (6th Cir. 1990). After all, attorneys who work on a contingent-fee basis "will not prevail every time. . . . Contingent fees generally overcompensate in some cases and undercompensate in others." *Royzer*, 900 F.2d at 982. Thus, a district court should not limit attorney's fees to "whatever flat hourly rate [it] deems reasonable." *Hayes*, 923 F.2d at 421. That said, it is not "improper for a district judge to reduce a contingent fee to an hourly rate and view the computed hourly rate as *part* of the calculus in arriving at an appropriate fee." *Royzer*, 900 F.2d at 982. This approach recognizes that "Congress has put the responsibility on the

federal judiciary to make sure that fees charged are reasonable and do not unduly erode the claimant's benefits." *Id.*

Even though district courts may consider the effective hourly rate in weighing reasonableness, we have set a "floor" for this analysis. *Hayes*, 923 F.2d at 422. If a "calculated hourly rate" (i.e., effective rate) is "less than twice the standard rate for such work in the relevant market," then it is "*per se* reasonable" and "a district court has no basis for questioning" it. *Id.*; *see also Lasley*, 771 F.3d at 309 (upholding the *Hayes* "floor" in a post-*Gisbrecht* decision). But if a calculated hourly rate is equal to or more than "twice the standard rate," "then the court may consider arguments designed to rebut the presumed reasonableness of the attorney's fee." *Hayes*, 923 F.2d at 422. Still, the higher fee "may well be reasonable." *Id.*

IV.

## A.        Order of the Reasonableness Analysis

Counsel first argues that the district court's "primary focus" was on the effective hourly rate under the lodestar method, contravening *Gisbrecht*'s instruction to look first to the contingency agreement, then test it for reasonableness. (ECF 15, Appellant Br., 31). We disagree.

The district court started with the contingency fee agreement just as *Gisbrecht* requires. The district court first noted that Counsel sought "25% of the past due award . . . pursuant to the plaintiff's fee contract with her attorney." (R. 29, Order, PageID 1310–11). It also properly recognized that "[s]ection 406(b) 'does not displace contingent fee agreements,'" rather it allows for "a reasonable fee of *up to* 25 percent of past due benefits," subject to the court's review for reasonableness. (*Id.* at PageID 1311) (quoting *Gisbrecht*, 535 U.S. at 807). This type of acknowledgment meets *Gisbrecht*'s command to look first to the claimant's fee agreement with counsel. *See Lasley*, 771 F.3d at 310. The district court then calculated that the $31,205.43 requested award, divided by the 34.8 hours Counsel worked, equated to an effective hourly rate of $896.71, which it found excessive relative to the statutory rate in the EAJA as well as Counsel's ordinary rate. It then considered other factors, like the complexity of the case, counsel-induced delay, and the fact that the remand stemmed from the Commissioner's

unopposed motion for remand, in finding that the requested fee award would constitute a windfall.

Neither *Gisbrecht* nor our own decisions restrict district courts from treating the effective hourly rate as a primary focus. Rather, they cannot solely rely on the difference between the effective hourly rate and the standard rate to find that an award is unreasonable. *Hayes*, 923 F.2d at 421. And the district court did not so restrict its analysis here. Instead, it looked first to the contingency-fee agreement and then tested it for reasonableness, considering both the effective hourly rate and other permissible factors.

### B.      Standard Rate Analysis under *Hayes*

Next, Counsel asserts that the district court's assessment of her effective hourly rate was faulty because the court failed to set a proper standard rate under *Hayes*, 923 F.2d 418. Instead, says Counsel, the district court incorrectly relied on the 1997 EAJA rate[2] and Counsel's ordinary personal rate. In *Hayes* we described the appropriate comparator rate as "the standard rate for such work in the relevant market," *id.* at 422, and "the standard rate of fees for attorneys within [a] geographical area . . . for work in a case of this kind," *id.* at 421 (quoting *McGuire v. Bowen*, 900 F.2d 984, 985 (6th Cir. 1990) (per curiam)).

Here, the district court made two points of comparison. It first compared the effective rate to the statutory or EAJA rate of $125 per hour. Then it weighed the effective rate against Counsel's ordinary rate of $236.25 per hour, noting that Counsel's requested fee was more than seven times the former and nearly quadruple the latter. Counsel complains, however, that neither comparator is the standard rate. And *Hayes* does not detail the meaning of "standard rate" beyond the language quoted above. According to Counsel, this has led to various approaches: most Eastern District of Kentucky ("EDKY") courts use the 1997 EAJA rate as the standard rate, while courts in some other districts look to the attorney's ordinary rate, and still others look to the prevailing market rate. *Compare, e.g.*, *Smith v. Comm'r of Soc. Sec.*, No. 19-cv-00458,

---

[2]The EAJA was amended in 1996 to increase the maximum statutory rate for attorney's fees awarded under the Act from $75 to $125 per hour, applicable to civil actions and adversary adjudications commenced on or after enactment on March 29, 1996. *See* Contract with America Advancement Act of 1996, Pub. L. No. 104-121, §§ 231–233, 110 Stat. 847, 862–63. Thus, 1997 was the first full year to which the amendment applied.

2022 WL 313754, at *3 (E.D. Ky. Feb. 2, 2022) (collecting in-district cases relying on the 1997 EAJA rate and stating that: "Courts in this District regularly look to the EAJA $125/hour cap, as routinely applied in this District, as the local standard for § 406 fees."), and *Barnett v. Saul*, No. 19-cv-00035, 2021 WL 684117, at *4 (E.D. Ky. Feb. 22, 2021) ("[T]his Court regularly calculates the standard rate for attorney's fees by relying on the statutory rate provided in the EAJA of $125.00 per hour."), *with Hunt v. Colvin*, No. 11-236, 2016 WL 3574398, at *2 (E.D. Ky. June 27, 2016) (relying on Counsel's evidence that $200 is "the hourly rate for an attorney in the Cincinnati area with comparable experience").

Counsel implores us to specify that *Hayes*'s reference to the "standard rate" means the then "*prevailing market rate* for private attorneys in the relevant market." (ECF 15, Appellant Br., 50). Counsel argues that, at the very least, the "standard rate" cannot mean the EAJA rate set in 1997, because that rate fails to account for nearly thirty years of inflation and undermines Congress's intent to ensure good representation, among other policy concerns. But to be clear, while we established a floor beneath which a fee is deemed per se reasonable in *Hayes*, we did not restrict calculations of the standard rate to any single methodology.

The district court did not explicitly set a standard rate, but when it compared Counsel's effective hourly rate to the 1997 EAJA rate, it cited *Hayes*, "noting that a hypothetical hourly rate greater than twice the standard rate is only accorded a rebuttable presumption of reasonableness." (R. 29, Order, PageID 1312). The common meaning of standard rate according to the Merriam-Webster Dictionary is "a basic or minimum rate established for similar work or occupation within a plant, industry, or community by collective agreement or . . . by law." *Standard Rate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/standard%20rate (last visited Apr. 29, 2025). While we need not adopt the dictionary definition of standard rate, it provides useful context. From this perspective, looking to the statutory fee as one consideration in a standard rate analysis is not completely without reason. What's more, the district court acknowledged that the EAJA rate "may be below the prevailing market rate." (R. 29, Order, PageID 1311). So it also considered that the effective hourly rate "nearly quadruples [Counsel's] ordinary rate of $236.25 per hour." (*Id.* at PageID 1312) (citing R. 26-4, Time Sheet). Courts may look to an attorney's ordinary rate as part of

their analysis of the reasonableness of the fee yielded by a fee agreement. *See Gisbrecht*, 535 U.S. at 808. After considering both points of comparison and the additional factors discussed, the district court concluded that an "imputed hourly rate of $500" adequately reflected the work done without resulting in a windfall. (R. 29, Order, PageID 1312). We see no misapplication of the law in this approach.

Counsel concedes that the district court's approach—relying on the 1997 EAJA rate as an implicit measure of the standard rate—is consistent with most EDKY courts. She counters that this approach is wrong and points out that other district courts, and at least one recent EDKY case, have interpreted the standard rate to mean the prevailing market rate. Yet even accepting Counsel's proposition that standard rate strictly means prevailing market rate, she offers no evidence to establish what the prevailing market rate is. And she faults the district court for relying on the hourly rate that she provided in her time sheet along with her motion. According to Counsel, the district court mistakenly concluded that the rate she submitted on the time sheet was her ordinary personal rate and then erroneously relied on it. On appeal, Counsel clarifies that the $236.25 hourly rate is not her ordinary personal rate; it is her calculation of the 1997 EAJA rate adjusted for inflation, which she used to support her claim for EAJA fees. Counsel contends that her ordinary personal rate is much closer to $650 to $750 per hour on the private market, given her unique expertise and experience.

These arguments are unavailing. Counsel cited the time sheet in her motion below as evidence that her contingency fee was reasonable. And the time sheet listed her hourly rate as $235.00 to $236.25. Based on these facts, the district court reasonably concluded that the time sheet was relevant evidence of Counsel's ordinary rate for social security cases. *See Gisbrecht*, 535 U.S. at 808 ("[T]he court may require [Counsel] to submit . . . as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases.") (citing *Rodriquez*, 865 F.2d at 741). As for Counsel's ordinary rate on the private market, that rate does not establish the standard rate in the EDKY for work in a case of this kind, as she herself recognizes.

Counsel posits that the standard rate in the EDKY should be $350 per hour or between "$200 to $500 per hour" based on other EDKY caselaw. (ECF 15, Appellant Br., 60, 62). She asserts that an effective hourly rate of "$650-$750 per hour" or up to $1,000 per hour is twice the true standard rate and is "*per se* reasonable today in the [EDKY]." (*Id.* at 65). She cites one EDKY case that applied a higher standard rate in a § 406(b) fee award. *See Lockridge v. Astrue*, No. 04-499, 2009 WL 127668, at \*2 (E.D. Ky. Jan. 16, 2009) (applying a standard rate of $350 per hour).

But *Lockridge* does not help her. In that case, the prevailing claimant's counsel "submitted documentation to the Court regarding hourly rates in the downtown Cincinnati, Ohio area and nationwide for attorneys with similar experience" and provided evidence of his specific experience to justify that rate. *Id.* Given this evidentiary basis, the district court concluded that an effective hourly rate of "$702.13" under the contingency agreement, when compared to "a standard hourly rate of about $350.00 per hour," was "reasonable" under *Hayes*.[3] *Id.* Unlike the counsel in *Lockridge*, Counsel here provided no evidence on attorney-fee rates in the EDKY for work in a case of this kind, beyond a general description of her experience. Thus, Counsel has not "show[n] that the fee sought is reasonable for the services rendered." *Gisbrecht*, 535 U.S. at 807.

Given that Counsel did not present evidence establishing what the standard rate for the EDKY for work of this kind is, the district court reasonably considered both the $125 EAJA rate and the $236.25 rate that Counsel provided when it analyzed the standard rate. It then considered that, even taking the higher of those two numbers, Counsel's effective hourly rate of $896.71 was well above the per se reasonable threshold of double $236.25 (i.e., $472.50). In fact, the effective hourly rate nearly quadrupled Counsel's time-sheet rate of $236.25. The district court's analysis appropriately went beyond mere reliance on the 1997 EAJA rate. And it

---

[3]Counsel also cites an EAJA fee award case from the EDKY, which considered an adjustment to the $125 statutory cap. *See Neace v. Kijakazi*, No. 20-CV-116, 2024 WL 2045701, at \*2 (E.D. Ky. May 8, 2024) (relying on counsel's evidence that the prevailing market rate for social security cases was "approximately $200 to $500 per hour" (citation omitted)). But an EAJA fee adjustment applies a different analysis than the standard rate analysis under *Hayes* and so it is not directly applicable here. Further, the counsel in *Neace* provided evidence of the prevailing market rate—affidavits from three attorneys in the practice area—which is the kind of evidence Counsel lacks here. *See id.*

did not abuse its discretion in reducing Counsel's fee request to an amount it deemed reasonable under the circumstances.

## C.    Other Factors

Finally, Counsel argues that the district court did not meaningfully explain its reasoning, outside the effective hourly rate, for finding that the full award would be a windfall.  Counsel asserts that the award she requested was reasonable based on her level of expertise, the complexity of the case, the risk she undertook, and the excellent result she achieved.

Along with the effective hourly rate, the district court considered factors like "the difficulty of the case, the results achieved, [and] whether the attorney was responsible for any delay."  (R. 29, Order, PageID 1312) (citation omitted).  It acknowledged "attorney Treyvus' skill, her firm's expertise in handling Social Security matters, and the degree of risk inherent in taking such cases" but balanced those considerations with its assessment that the case "was not particularly complex as the plaintiff's brief was limited to two relatively straightforward issues." (*Id.*).  The district court also noted that the Commissioner filed an unopposed motion to remand and Counsel obtained a thirty-day extension to file the brief, because she was "unable to complete [Tucker's] brief in a timely manner."  (*Id.*) (alteration in original) (citation omitted).  It concluded that "[a]n imputed hourly rate of $500 adequately reflects the difficulty of the work performed, the competency with which it was performed, and the level of success achieved, but does not result in windfall to counsel."  (*Id.*).

Counsel's disagreement with the district court's assessment is not grounds for reversal. Here, Counsel's 34.8 hours fell within the range we have considered "average" in social security cases.  *Rodriquez*, 865 F.2d at 747 n.4.  "[T]he district court considered the relevant factors that the Supreme Court outlined in *Gisbrecht*: the difficulty of the case, the character of the representation, [any] delay on counsel's part, and the results that counsel achieved."  *Steigerwald v. Comm'r of Soc. Sec.*, 48 F.4th 632, 643 (6th Cir. 2022).  It acknowledged Counsel's skill and expertise but reasonably concluded that the case did not reach a level of complexity or effort that merited the maximum award.  Extending the district court the "highly respectful review" it is due, we find that it acted within its discretion.  *Gisbrecht*, 535 U.S. at 808.

V.

We AFFIRM.