**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID KOCAN; MARYANNE C.
KOCAN; RICHARD E.F. VALITUTTO; R.
JULENE VALITUTTO; KENNETH L.
LONG,
Plaintiffs-Appellants,

v.

ABF FREIGHT SYSTEM,
INCORPORATED; ARKANSAS BEST
CORPORATION; CAROLINA FREIGHT
CARRIERS CORPORATION; WORLDWAY
CORPORATION,
Defendants-Appellees.

No. 99-1504

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-97-177-3, CA-97-178-3, CA-97-335-3)

JOHN WILLIAM RUDASILL, JR.; VICKIE
COSTNER RUDASILL,
Plaintiffs-Appellants,

v.

WORLDWAY CORPORATION; LARY R.

SCOTT; RICHARD F. COOPER; WILLIAM
A. MARGUARD; JOHN R. MEYERS;
JOHN H. MORRIS; DONALD L. NEAL;
R. DAVID SLACK; ROBERT A. YOUNG,
III,
Defendants-Appellees.

No. 99-1715

Appeal from the United States District Court
for the Western District of North Carolina, at Shelby.
Lacy H. Thornburg, District Judge.
(CA-97-201-T-4)

Argued: May 4, 2000

Decided: August 4, 2000

Before WILKINSON, Chief Judge, and NIEMEYER
and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael L. Minsker, Charlotte, North Carolina, for
Appellants. Debbie Weston Harden, WOMBLE, CARLYLE, SAN-
DRIDGE & RICE, P.L.L.C., Charlotte, North Carolina, for Appel-
lees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The cases in this consolidated appeal were brought to recover sev-
erance benefits under the Employee Retirement Income Security Act
(ERISA), 29 U.S.C. § 1001 et seq., and state law. Two district courts,
after bench trials, ruled against the plaintiffs, who now appeal. The

2

principal conclusion of each court was the same: the plain language of the severance plan at issue did not require the payment of benefits. We agree with the district courts and therefore affirm.

I.

David Kocan, Richard E. F. Valitutto, Kenneth L. Long, and John William Rudasill (collectively, the "plaintiff-executives") once held executive positions in trucking subsidiaries controlled by WorldWay Corporation ("WorldWay"), a company that was acquired through a friendly takeover in 1995 by Arkansas Best Corporation ("Arkansas Best"). Shortly after the takeover, Arkansas Best appointed new directors to the WorldWay board. The newly constituted board promptly fired the plaintiff-executives. Thereafter, the plaintiff-executives sought to collect a variety of retirement and severance benefits; they were unsuccessful in one instance: WorldWay refused to pay them an accelerated severance benefit. This benefit is the subject of the present dispute.

The accelerated severance benefit is part of a larger benefits plan, the Senior Executive Benefit Plan ("SEBP"), that the plaintiff-executives entered into with WorldWay.[1]  The SEBP provided that the accelerated severance benefit was payable if two conditions were met: (1) the beneficiary was terminated after a change of control of World-Way and (2) the beneficiary was terminated without the approval of the "Incumbent Board of Directors" of WorldWay. We state the issue now: the plaintiff-executives contend that they were not fired by the "Incumbent Board" as the term is defined by the SEBP, while the defendants counter that this is precisely what happened.

The SEBP defines "Incumbent Board" in the context of addressing termination after a change in control of WorldWay. The first relevant portion of the plan, paragraph 9(b), reads:

> [N]othing in this Agreement shall be construed to obligate the Company to continue to employ Employee; provided, however, that in the event such employment relationship is

_____

[1] WorldWay administered the SEBP on behalf of its subsidiaries.

3

terminated by the Company or any successor corporation at any time after a change in control of the Corporation or any successor corporation, and such termination occurs without the written approval of a majority of the Incumbent Board as defined in paragraph 9(c)(2) either before or after such termination occurs, the Company or its successor corporation, as the case may be, shall pay to the Employee the benefits provided . . . .

Paragraph 9(c)(2) provides the accompanying definition of "Incumbent Board":

provided that any person becoming a director subsequent to the date hereof whose election, or nomination for election by the Corporation's [i.e., WorldWay's] shareholders, was approved by a vote of at least three quarters of the directors comprising the Incumbent Board (either by a specific vote or by approval of the proxy statement of the Corporation [i.e., WorldWay] in which such person is named as nominee for director, without objection to such nomination) shall be, for purposes of this clause (c), considered as though such person were a member of the Incumbent Board.

This version of the SEBP was not the first. The version in effect immediately prior to the one applicable to the plaintiff-executives did not have the Incumbent Board mechanism in it. Instead, it simply relied on a change of control to trigger benefits in the event the beneficiary was fired without the approval of the board:

Nothing in this Agreement shall be construed to obligate the Company to continue to employ Employee; provided, however, that in the event such employment relationship is terminated within twenty (20) years of the date of this Agreement by Company or any successor corporation at any time after there has been a change in the working control of the Company or any successor corporation, and such termination occurs without the approval of the then living members of the Board of Directors of the Company as that Board was composed on (the date of the Agreement), Company or

4

> its successor corporation, as the case may be[,] is required to pay the accelerated severance benefit.

WorldWay redrafted the SEBP to include the Incumbent Board mechanism in order to protect the company from a hostile takeover.**2** By the late 1980s WorldWay had become seriously concerned about the threat of a hostile takeover. Accordingly, the WorldWay board reevaluated its ability to defend against a takeover attempt and concluded that it should modify the SEBP to impose a penalty on any buyer who did not first negotiate with the WorldWay board. Thus, the changes to the SEBP were, in the words of John B. Yorke, Assistant General Counsel from 1987 to 1993 and General Counsel from 1993 to 1995, "shark repellent" designed "to put a penalty on an unfriendly takeover candidate." Or, as one longstanding WorldWay board member said, "we were afraid [that] someone was trying to circumvent the board, and that the language was put in there so they could not circumvent the board, or not without incurring some severe penalties."

By 1995 it appeared that WorldWay had little reason to fear a hostile takeover; it was in such financial straits that bankruptcy was near. Things were so bad that the company was losing close to a million dollars per week. Its bankers were about to shut off credit. One board member assessed the situation as "pretty frightening." Rather fortunately, Arkansas Best offered to purchase WorldWay for $11 per share, a price that was almost 16 percent higher than WorldWay's traded share price. The WorldWay board was "ecstatic" at such a proposition and voted unanimously on July 8, 1995, to recommend a merger to the shareholders.

Before the merger went through, Arkansas Best's General Counsel, Richard F. Cooper, considered the costs that would be triggered by WorldWay's severance plans. According to Cooper, the SEBP did not provide severance benefits if Arkansas Best negotiated a friendly takeover of WorldWay. As he put it, the SEBP

_____

**2** An ancillary reason for redrafting the SEBP was the fact that the earlier version did not sufficiently address changes in the board's composition due to deaths, retirements, and the like.

5

was the standard type provision that allowed, if you went to the board of the company you were trying to acquire and went through them, then they could deactivate the change in control provision, the acceleration, by effectively blessing the deal, and therefore, you wouldn't have to pay any of the penalty and acceleration.

Further, Cooper noted that several other benefit and severance agreements WorldWay had with its employees "did not have an Incumbent Board concept in them," a fact which also led him to conclude that the SEBP was designed as a penalty that could be deactivated by a friendly takeover. One of these other plans, the 2.99 Severance Pay Plan, provided a particularly sharp contrast to the SEBP. The 2.99 plan allowed no discretion in the payout of benefits following termination. The relevant section of the plan reads:

> If any of the events described in Section 3 hereof constituting a change in control of the Company shall have occurred, you shall be entitled to [specified severance benefits] upon the termination of your employment within twenty-four (24) months after such event, unless such termination is (a) because of your death or Retirement; (b) by the Company for Cause or Disability; or (c) by you other than for Good Reason. . . .

The Arkansas Best takeover went forward under a merger agreement that was voted on by WorldWay's directors and shareholders. Among other things, the merger agreement allowed Arkansas Best to designate new directors for election to WorldWay's board in proportion to its share of WorldWay stock. The WorldWay directors who approved of the merger (the "pre-merger directors") were informed of the names of their proposed replacements, as were the shareholders. In addition, the pre-merger directors tendered their resignations in advance and directed WorldWay's general counsel to take steps "necessary and appropriate" to carry out the terms of the merger agreement.

The merger agreement was extremely well received. The World-Way board unanimously approved it, and the shareholders endorsed it by tendering 91 percent of WorldWay's shares to Arkansas Best for

6

payment. In short order, WorldWay's general counsel, who remained after the merger as the sole board member, appointed seven new directors (who had been identified in the merger documents) to the WorldWay board. In October of 1995 this new WorldWay board (the "post-merger board") terminated the plaintiff-executives.

The plaintiffs brought four separate cases to recover benefits under the SEBP or damages for the denial of benefits. David Kocan and his spouse, Richard E. F. Valitutto and his spouse, and Kenneth L. Long brought three of the cases. Each of these cases named as defendants Carolina Freight Carriers Corporation (the subsidiary of WorldWay that Kocan, Valitutto and Long worked for), WorldWay, Arkansas Best, and ABF Freight System (an Arkansas Best subsidiary). These three cases were ultimately consolidated for a bench trial before Judge Potter. The plaintiffs in the consolidated case asserted a variety of claims under ERISA as well as under the doctrine of equitable estoppel. At the summary judgment stage, the equitable estoppel claim was dismissed and the number of claims was winnowed to three -- those for benefits, clarification of rights, and attorney's fees. After a bench trial, Judge Potter found for the defendants. The fourth case, filed by John William Rudasill and his spouse, was removed from state court and assigned to Judge Thornburg. The Rudasills raised several ERISA and common law claims (including an equitable estoppel claim) against WorldWay and the individual board members of WorldWay who refused to pay Mr. Rudasill's SEBP accelerated severance. In the Rudasill case, all but the ERISA claims for a declaration of rights and attorney's fees were denied at the motions stage of the proceedings. After a bench trial, Judge Thornburg found for the defendants on the ERISA claims.

Both district courts concluded that the SEBP plan unambiguously established that the plaintiffs were not entitled to benefits. The central question, according to each district court, was the meaning of the term "Incumbent Board." If the "Incumbent Board" fired the plaintiff-executives, then they were owed no benefits. Each court found the meaning of the term clear; as Judge Potter said,"the language in the SEBP plan is not ambiguous. It means what it says, and says what it means." Kocan v. ABF Freight System, Inc., No. 3:97CV177-P, mem. op. at 21 (W.D.N.C. Jan. 15, 1999). In sum, the district courts decided

7

that when the pre-merger board voted to accept the plan of merger, it thereby voted to appoint Arkansas Best's designees as directors.

The plaintiffs in both cases appeal.

II.

We begin with a brief note about the applicable standards of review. The district courts' interpretation of the SEBP plan language is subject to de novo review. See Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 509 (4th Cir. 1994). The factual determination of the district courts are reviewed for clear error. See First Federal Sav. & Loan of South Carolina v. Chrysler Credit Corp., 981 F.2d 127, 129 (4th Cir. 1992). Last, we bear in mind that "[t]he award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." Hickey v. Digital Equip. Corp., 43 F.3d 941, 947 (4th Cir. 1997) (quoting Lockhart v. United Mine Workers 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993).

The plaintiffs raise three issues on appeal. First, they claim that paragraphs 9(b) and 9(c)(2) of the SEBP are ambiguous. Second, and most significantly, they claim they were not fired by the Incumbent Board. According to them, the "Incumbent Board" was the pre-merger board. They base this claim on the argument that the post-merger board of WorldWay was not properly elected and, therefore, could not have constituted the Incumbent Board of WorldWay. Third, the plaintiffs contend that both district courts erred by dismissing their equitable estoppel claims. For the following reasons, we must disagree.

The language of the SEBP is unambiguous and does not provide for benefits to the plaintiffs. Paragraph 9(b) of the SEBP plainly states that the Incumbent Board may fire those covered by the plan without triggering the accelerated severance benefit. As well, paragraph 9(c)(2) of the plan plainly states that the Incumbent Board may change its makeup so long as new members are added by "a vote of at least three-quarters of the directors comprising the Incumbent Board." This is exactly what happened when the pre-merger World-Way board voted to merge with Arkansas Best on July 8, 1995. At that time, the entire pre-merger WorldWay board voted to appoint, from the list of designees provided by Arkansas Best, new directors

8

to the post-merger WorldWay board. This action fit the spare, but specific, language of the SEBP, which allowed the Incumbent Board to change its makeup (by a three-fourths vote) and still remain the Incumbent Board. The post-merger board was thus the Incumbent Board, and the Incumbent Board fired the plaintiff-executives. In short, we agree with the district courts' interpretation of the SEBP, which set out a process through which the Incumbent Board could evolve, as it did here.

The broader factual picture surrounding the change in wording of the SEBP and Arkansas Best's takeover of WorldWay is instructive. WorldWay changed the SEBP to allow a new board, constituted in the wake of a friendly takeover, to fire executives covered by the SEBP without having to pay accelerated severance. The accelerated severance package was a penalty designed to protect WorldWay. Although this point is not dispositive in light of the plain language of the plan, it does reinforce the conclusion.

There is no merit to the plaintiffs' contention that the post-merger board was not properly elected, and for this reason, could not constitute the Incumbent Board. Both district courts found, as fact, that the post-merger board was properly elected according to the bylaws of WorldWay. The applicable bylaws of WorldWay provide that "[a]ny vacancy occurring in the Board of Directors . . . may be filled by the Board" and that "the directors may fill the vacancy by the affirmative vote of a majority of all directors, or by the sole remaining director, remaining in office." The voting coincident with the merger agreement fit this bylaw: the pre-merger board unanimously voted to fill the vacancies that would be generated by the merger. The district courts did not clearly err in finding (and concluding) that the post-merger board of WorldWay was properly elected to succeed the pre-merger board.

The plaintiffs' equitable estoppel claims were properly dismissed by both district courts. The plaintiffs claim that Arkansas Best should be estopped from denying them the accelerated severance benefits because the plaintiffs reasonably believed they were owed these benefits. The estoppel remedy is not appropriate because an ERISA remedy was available here. See Coyne & Delaney Co. v. Blue Cross & Blue Shield, Inc., 102 F.3d 712, 716 (4th Cir. 1996).

9

Last, there was no need to award the plaintiffs attorneys' fees in this case. The plaintiffs are not due benefits, and there is no evidence the defendants acted in bad faith. The district courts were well within their discretion to deny an award of fees. See Metropolitan Life Ins. Co. v. Pettit, 104 F.3d 857, 865 (4th Cir. 1998).

The judgments are affirmed.

AFFIRMED

10